(S. v. Haney, 2 Dev. Bat., 390; S. v. Hardin, ibid., 407; S. v. Holland,83 N.C. 624; cited and approved.)
The defendant and one Sam Dick were charged with stealing money from one Wm. Boyd, in 1886. Said Boyd was offered as a witness for the State, and testified, that he had lost money at different times in August and September, to the amount of $175.00 or $200.00; that on the night of 15 September he lost $50 in bills, and a considerable amount in silver. . . That the defendant lived on his plantation, and that one Wm. Lucas, a colored boy, slept in a cook room adjoining his chamber, from which a door opened into his chamber, and that this door was not locked or fastened; that he discovered the loss about midnight of 15 September, and arrested Lucas before daylight the next morning, and kept him under arrest during the entire day.
The State then introduced the boy, Wm. Lucas, who testified that the defendant and one Dick had employed him to keep Boyd's dogs off, while they went into Boyd's room and stole his money; that on the night of 15 September he did keep the dogs quiet, and they went (485) into Boyd's room, and afterwards gave witness some of the money. He further testified, that on one occasion he went with *Page 375 
the defendant to the store of one Thomason, a few miles from Boyd's house, and that on that occasion the prisoner had a ten dollar bill, which he, the prisoner, got Thomason to change, and with which he purchased some articles of clothing, and paid witness $3.00; that he never saw the bill until prisoner produced it in the store. Witness said in his direct and redirect examination, that the transaction at Thomason's store was on the morning of 16 September, the morning after he saw the prisoner go into Boy's house.
On his cross-examination he said it occurred a week or so before 16 September.
The defendant then introduced as a witness one Wm. Thomason (one of the owners of the store mentioned), who testified that on the occasion alluded to by Lucas, he, Lucas, and the prisoner came to the store owned by his brother and himself — that Lucas took from his pocket the $10 bill alluded to, and handed it to prisoner, and the latter handed it to witness — that Lucas bought some articles from the store, and directed him to take payment from the bill — that he did so, and placed the change on the counter, and prisoner pushed the money to Lucas and said: "Here is your money," and Lucas took it up and handed $3 to the prisoner. This was about dark on 1 September. James Thomason testified to the same facts. The prisoner then, in his own behalf, testified, denying the statements of Lucas as to the stealing, and testified as to the transaction at Thomason's store, giving precisely the account given by William and James Thomason.
The case states that: "There were other circumstances relied on by the State as corroborative evidence, but which are not material to the exception."
"The court instructed the jury, that it was unsafe to convict the defendants (Miller and Dick were both on trial) upon the uncorroborated testimony of an accomplice. That the most (486) important witness for the State (Lucas) was an accomplice in the commission of the alleged crime, and that he stood before the jury in the attitude of a self-confessed thief, and the jury ought not to convict those defendants upon the statement of Lucas unless his statement had been corroborated as to material facts, and to such extent as to carry home to their mind a strong conviction of the truthfulness of his statements. That the State had alleged and endeavored to establish the truth of several transactions relating to the use and exhibition of money on the part of the defendant, Banks Miller, as corroborative of the statements of Lucas."
His Honor then recapitulated the testimony of the witnesses Lucas and Boyd, witnesses for the State, and of the prisoner Miller and W. *Page 376 
and James Thomason for the defendant, and speaking of what occurred at Thomason's store, he said: "This was one of the circumstances or transactions which the State alleged was strongly corroborative of the other testimony of the witness Lucas, as to the alleged robbery of Boyd's money on the preceding night. That in the consideration of these alleged corroborative facts and circumstances, it was exclusively within the province of the jury to pass upon the degree of credibility to be attached to the statements of witnesses, and to decide whether the State had established the existence of the facts or circumstances beyond a reasonable doubt, and that if they were so convinced, the next question for them would be, to what extent did such established facts corroborate the account of the robbing as stated by the witness Lucas. That the alleged corroborative facts, if established by the State, should be so strong, that when taken in connection with the account of the robbing as given by Lucas, as to convince the jury beyond a reasonable doubt of the truthfulness of his account of the robbery and the guilt of the defendant.
(487) "The court then recapitulating all the testimony on both sides going to prove and disprove the alleged facts and circumstances, among them the alleged payment of money by Banks Miller to Lucas at Kindrick's store and denied by defendant, the alleged exhibition of a five dollar bill and some silver by Miller at Celia's house, which was denied by Miller — the alleged fact that the defendants went over to South Carolina on the night after the robbery, and returned on the third day, when they had been induced to believe that they would not be arrested, that Boyd asked the defendant Miller if he had seen Lucas with any money of late, stating that he had been frequently robbed of money since 12 August, and that Miller did not tell Boyd of his seeing Lucas with any money, all of which alleged facts were denied by Miller. The court then gave the same instructions with regard to each and all of these alleged corroborative facts as were given in regard to the transaction at Thomason's store."
There was a verdict of guilty, and judgment and appeal.
It has been repeatedly laid down, that a conviction on the testimony of an accomplice uncorroborated is legal; Roscoe's Criminal Evidence, 121; and this has been well settled as the law of this State, certainly since the cases of S. v. Haney, 2 D. B., 390; S. v. Hardin, ibid., 407; S. v.Holland, 83 N.C. 624. *Page 377 
It is, however, the almost universal practice of the judges to instruct juries that they should be cautious in convicting upon the uncorroborated testimony of accomplices, and Gaston, J., in S. v. Haney, says: "The judge may caution them against reposing hasty confidence in the testimony of an accomplice. . . . Long usage, sanctioned by deliberate judicial approbation, has given to this ordinary caution a precision which makes it approach a rule of law." (488)
If the unsupported testimony of the accomplice produce undoubting belief of the prisoner's guilt, the jury should convict. The manner and bearing of the witness upon the stand, the probability of his statements, are all matters for the sole consideration of the jury.
We understand the counsel for the defendant to concede that his Honor, in charging the jury that they ought not to convict upon the testimony of Lucas, unless corroborated, erred in favor of the prisoner, but it is insisted that he erred in telling them that what occurred at Thomason's store was corroborative, and that the jury were, or might have been misled thereby.
The corroboration of an accomplice ought to be as to some fact or facts, the truth or false hood of which goes to prove or disprove the offense charged against the prisoner; Rex v. Addie, 6 Carrington Payne, 452;Commonwealth v. Barnett, 22 Pick., 397.
In this case, we do not understand his Honor as charging the jury that the testimony of Lucas was corroborated by what was done at Thomason's store, but he was giving the State's contention, and said the "State alleged" that the circumstances and transactions were corroborative. It is admitted that Lucas was a thief and that the money of Boyd was stolen.
The defendant was in company with Lucas at Thomason's store — they seemed to be associates, and whether Lucas or the defendant had the money, it was passed from one to the other, and these circumstances were doubtless subjects of comment by the solicitor for the State, and his Honor did nothing more than recapitulate the evidence and the aspects in which it had been presented by counsel. The charge was altogether as favorable to the prisoner as was warranted by the evidence, and there was no error of which he could justly (489) complain. No error. Let this be certified.
No error. Affirmed.
Cited: S. v. Rowe, 98 N.C. 637; S. v. Mitchener, ibid., 694; S. v.Barber, 113 N.C. 713; S. v. Register, 133 N.C. 753; S. v. Ashburn,187 N.C. 728. *Page 378