### STATE v. EARLY ASHBURN AND ESSIE HANDY.

#### (Filed 14 May, 1924.)

**1. Jurors—Qualification—Statutes—Challenges.**

Where a juror has a civil action calendared for the term and continued in the discretion of the trial judge, it is not objectionable that he be permitted by the court to sit as a juror in a criminal action at the same term, the reason of the statute (C. S., 2316) for the disqualification being removed.

**2. Same—Several Defendants—Criminal Law.**

Where two or more defendants are being tried for the same crime, and, upon challenge for cause by one of them, the juror is stood aside upon cause admitted by the State, the other defendant who desires the juror to sit has no legal ground of complaint.

**3. Same—Homicide—Felonies.**

The effect of C. S., 2325, was to permit a party to a criminal action to make·inquiry as to the fitness and competency of a juror before the adverse party would be permitted to admit the cause and have him stood aside therefor, and this course cannot now·be pursued, except where the challenging party, after making such inquiry, states that the juror is challenged for·cause; and C. S., 4634, abolishing the established practice

permitting the solicitor to place jurors, upon the trial of a capital felony, at the foot of the panel, does not affect the application of C. S., 2325, to the trial of such felonies.

### 4. Same—Interpretation of Statutes.

The legislative intent in the enactment of C. S., 4633, providing twelve peremptory challenges for the defendant tried for a capital felony, and in other criminal cases four peremptory challenges, and requiring the clerk to read over beforehand the names of the jurors in the panel, in the presence and hearing of the defendants and their counsel, etc., is to secure a reasonable and impartial verdict.

### 5. Same—Trials—State's Evidence.

Where the defendant in a criminal action has selected her jury, and thereafter has entered a plea of guilty and become a witness against her codefendant, being tried for the same offense, she is within her statutory right in exercising such right, and her codefendant may not sustain his exception thereto.

### 6. Appeal and Error—Evidence—Objections and Exceptions.

An exception to testimony excluded by the trial judge is not maintainable unless its relevance or materiality is made ˙to appear in the record on appeal.

### 7. Evidence—Homicide—Criminal Law—Independent Acts—Motive.

Where there is evidence tending to show that the defendant strangled to death his illegitimate child soon after it was born alive, it is competent to show his intimacy and misconduct with its mother, when relevant, as tending to prove the *quo animo* or guilty knowledge, or motive for the crime.

### 8. Instructions—Requests—Appeal and Error.

Where the trial court clearly gives in his charge the full substance of a request for instruction, it is sufficient.

### 9. Instructions—Contentions—Appeal and Error.

An exception to the recital of the contentions of the appellant, contained in the judge's charge, should be taken in time to afford the judge an opportunity to correct them.

### 10. Homicide—Evidence—Instructions—Appeal and Error.

Where, upon the trial for a homicide, the defendant relies only on his evidence to show an *alibi*, and the State's evidence tends to convict him of murder in the second degree, it is not ·error for the court below to instruct the jury, as a matter of law, that a verdict of guilty of manslaughter could not be returned by them, there being no evidence thereof.

### 11. Evidence—Criminal Law—Accomplice—Instructions.

A verdict of murder will be sustained upon the. unsupported testimony of an accomplice in the crime when, having been instructed by the judge to receive it with caution, owing to the great interest of the witness, the jury have found it sufficient.

CLARK, C. J., concurring.

CRIMINAL ACTION, heard before *Lane, J.,* and a jury, at October Term, 1923, of SURRY.

Appeal by Early Ashburn.

The defendants were indicted, with Sena Thomas, for the murder of an infant born to the defendant, Essie Handy. A true bill was found against Early Ashburn and Essie Handy, and not a true bill as to Sena Thomas. The defendants Early Ashburn and Essie Handy pleaded not guilty, whereupon a venire was ordered and summoned. After the jury was selected and impaneled, Essie Handy plead guilty of manslaughter, which plea was accepted by the State,. and she testified as a witness for the State.

There was a verdict of guilty of murder in the second degree as to Early Ashburn.

From the judgment rendered, the defendant assigned errors and appealed to the Supreme Court. The other material facts and the assignments of error will be considered in the opinion.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. H. Folger for defendant.*

CLARKSON, J. The first assignment of error was to the court below denying the defendant Early Ashburn "challenge for cause" as to the juror W. S. Gough. The contention being that he had a case on the docket at issue, and that the rule of the bar, as printed at the foot of the calendar, is that civil cases not calendared may be taken up by consent.

The court, upon objection to the juror, stated that all civil cases not on the calendar are continued, for that it is impossible to try civil cases not on the calendar set for this term. The juror was then challenged peremptorily by the defendant Ashburn.

C. S., 2316, is as follows: "If any of the jurors drawn have a suit pending and at issue in the Superior Court, the scrolls with their names must be returned into partition No. 1 of the jury box."

It is well settled that if a juror has a suit pending and at issue in the Superior Court of the county, he may be challenged for this cause. *S. v. Levy, ante,* 585; *S. v. Hopkins,* 154 N. C., 622; *S. v. Spivey,* 132 N. C., 989; *S. v. Vick,* 132 N. C., 997; *Hodges v. Lassiter,* 96 N. C., 351.

The object of C. S., 2316, is to disqualify one to serve as a juror at the same term that he has *"a suit pending and at issue,"* to be tried at that term, so that he could not associate with the other jurors who might sit on his case. The reason is apparent. *Cessante ratione legis, cessat et ipsa lex.* (The reason of the law ceasing, the law itself ceases also.)

The court below continued the case of the juror. It was not on the calendar and it was impossible to try it at that term. This was in the sound discretion of the court below. *S. v. Hopper,* 186 N. C., 411.

The second, third, and fourth assignments of error were to the court below allowing W. M. Payne, S. A. Johnson, and J. A. Hayes, jurors, to be stood aside. The jurors referred to in these assignments of error were examined as to their qualifications and competency to serve upon the jury by the defendant Essie Handy, they having been passed by the State and by the defendant Ashburn. The counsel of Essie Handy challenged the several jurors for cause, whereupon in each case the solicitor admitted the cause, and the jurors were stood aside.

Section 2325, C. S., provides: "The court or any party to an action, civil or criminal, shall be allowed in selecting the jury to make inquiry as to the fitness and competency of any person to serve as a juror without having such inquiry treated as a challenge of such person, and it shall not be considered by the court that any person is challenged as a juror until the party shall formally state that such person is so challenged."

Section 4633, C. S., provides: "Every person on joint or several trial for his life may make a peremptory challenge of twelve jurors, and no more; and in all joint or several trials for crimes and misdemeanors, other than capital, every person on trial shall have the right of challenging peremptorily, and without cause, four jurors, and no more. And to enable defendants to exercise this right, the clerk in all such trials shall read over the names of the jurors on the panel, in the presence and hearing of the defendants and their counsel, before the jury shall be impaneled to try the issues; and the judge or other presiding officer of the court shall decide all questions as to the competency of jurors."

Section 4634, C. S., provides: "In all capital cases the prosecuting officer on behalf of the State shall have the right to challenge peremptorily four jurors for each defendant, but shall not have the right to stand any jurors at the foot of the panel. The challenge must be made before the juror is tendered to the prisoner, and if he will challenge more than four jurors he shall assign for his challenge a cause certain; and in all other cases of a criminal nature a challenge of two jurors shall be allowed in behalf of the State for each defendant, and challenge also for a cause certain, and in all cases of challenge for cause certain, the same shall be inquired of according to the custom of the court."

These sections were part of the amendments made by chapter 31, Public Laws 1913. The first quoted section, to wit, 2325, was plainly intended to eliminate the practice that had grown up prior to 1913, when

the solicitor asked a person called to serve on a jury in a capital felony challenge for cause, counsel of defendants could admit the cause without further question of the juror and the juror would be stood aside. This section provides and gives the right to the State or to the defendant to inquire of the juror as to his fitness and competency to serve, but none of these questions shall be considered a challenge until the party actually and formally challenges the juror. There is no provision in the statute law of the State which prevents the adverse party from, then, when the juror is formally challenged, admitting the cause.

The section above quoted (4634) abolished what had been, up to 1913, a practice employed by the solicitors of standing a certain number of persons at the foot of the panel. But there is nothing in this section which prevents either the solicitor or counsel for the defendant, when a juror is formally challenged, from admitting the cause, and then the juror is stood aside. In this case, as to those jurors, the State passed the jurors; the defendant Ashburn, being first named in the indictment, passed the jurors, but the other defendant in the indictment, Essie Handy, had certainly a right to determine whether the jurors were acceptable to her, and she had a right to challenge the jurors for cause. It seems, under these statutes above quoted, and under the custom of the court, which is provided in section 4634 of C. S., the solicitor had a right to admit the cause. Ashburn could not object. It seems that in this particular case, according to the record, the defendant obtained advantage in selecting the jury by this same practice. Jurors J. E. Southern and R. J. Williams were challenged for cause by defendant Ashburn, and the cause admitted by the State, and the jurors stood aside.

Section 4633, *supra*, allows each defendant twelve peremptory challenges—three times more than the State. The intent of the law is to secure a jury that will render a fair and impartial verdict.

The assignment of error No. 5 is untenable, from the view we take of the before mentioned assignments. F. C. Sprinkle, a juror, was challenged for cause by defendant Ashburn. No cause found, whereupon Ashburn, having exhausted all his peremptory challenges, asked the court to stand the juror aside. The court refused. The juror was tendered to the defendant Ashburn, who, through his counsel, in answer to the question, "Do you like him," answered "No." The juror was not stood aside, but tendered to and accepted by the defendant Essie Handy. The juror, having been passed by the State, was sworn and served on the panel.

It appears that Essie Handy remained as a defendant in the trial of this cause until the jurors were selected before she entered her plea of manslaughter, and was afterwards used as a witness for the State. We

STATE *v.* ASHBURN.

do not think this fact would debar her of the legal rights she had in selecting the jury. It was a circumstance that could be, and no doubt was, commented on to the jury to affect her credibility showing her interest to save herself. But this is a fact we cannot deal with.

We do not think there was any error in the rulings of his Honor constituting assignments of error 6 and 7, for the reason that it does not appear what the witness' answer would have been in either case. The first exception is taken to the question asked R. E. Lawrence, chief of police, to wit, "Did Mrs. Gordy make any statement to you at Mrs. Cook's about the birth of this child?" We understand the rule to be that excluded testimony must be set out and it must appear that it was relevant and material. The question asked the chief of police does not itself convey what the answer would have been, nor does the question constituting the seventh exception carry with it a suggestion of the answer, and there is no statement in respect to either question as to what the answer of the witness would have been. *S. v. Jestes,* 185 N. C., 736; *S. v. McCanless,* 182 N. C., 843; *S. v. Yearwood,* 178 N. C., 813; *S. v. Spencer,* 176 N. C., 709; *S. v. Neville,* 175 N. C., 731; *S. v. Williams,* 168 N. C., 191; *S. v. Dula,* 61 N. C., 437. And the same rule applies in civil cases. *Barbee v. Davis, ante,* 85; *Snyder v. Asheboro,* 182 N. C., 710; *Smith v. Comrs.,* 176 N. C., 466, and numerous other cases.

We have carefully considered assignments 8, 9, 10 (11 abandoned), 12, 13, 14, 15, 16, 17 and 18 and can find no prejudicial or reversible error.

The 19th assignment of error is to the five propositions proposed to be shown by the testimony of Mrs. T. H. Tranum:

1. That the witness saw Frank Hawks alone in the home of Essie Handy at night.

2. That she saw Essie Handy follow Frank Hawks into the privy to the rear of Essie Handy's house at night and remain there for some time.

3. That on another occasion she saw Frank Hawks carrying Essie Handy's baby. This had reference to the first child of Essie Handy.

4. That she had seen them drunk together.

5. That Frank Hawks lived in the same house with Essie Handy; she upstairs and he down. That all of this took place in the year 1922.

In *S. v. Frazier,* 118 N. C., 1258, it is said: "The Court in *S. v. Jeffries,* 117. N. C., 727, said: 'There are some few exceptions to the almost universal rule of law, that evidence of a distinct substantive offense cannot be admitted in support of another offense.' The exceptions to the rule are to be found in those cases in which testimony concerning independent offenses has been admitted because of the necessity

of proving the *quo animo,* or the guilty knowledge of the defendant, and also for the purpose of identification of the defendant." *S. v. Griffith,* 185 N. C., 760.

In *S. v. Davis,* 77 N. C., 483, an opinion written by *Bynum, J.,* it was held that "evidence that a third party had malice towards the deceased, a motive to take his life and an opportunity to do so, and had made threats against him, and that some time before deceased was killed he went in the direction of deceased's house with a deadly weapon, threatening to kill him, was inadmissible." *S. v. Lane,* 166 N. C., 338; *S. v. Fogleman,* 164 N. C., 461.

We have carefully considered 20, 21, 22 and 23 assignments of error, relating to defendant's prayers for instructions. We think the charge of the court below given includes substantially what defendant was entitled to under the law and the facts in the case.

Assignment 24 is to the State's contention given by the court. This cannot be sustained.

In *S. v. Barnhill,* 186 N. C., 450 (and cases cited), it was said: "If the recitals of the court were incorrect as to the facts of the case, it was the duty of the defendant to call the court's attention to it, so that the correction could be made then and there. If this was not done at the time, the defendant cannot complain and wait and except when the case is made up on appeal."

The decision in *S. v. Love, ante,* 37, is not at variance with this, for there the judge placed before the jury in his charge evidence which had been excluded on the examination of the witness and which the defendant had no opportunity to rebut. It was held that this error was not subject to correction under the facts of that case.

The 25th assignment of error was taken to the charge of the court below: "The court charges you as a matter of law there is no evidence of manslaughter, and the defendant could not be found guilty of manslaughter because there is no evidence of it." We can see no error in this charge under the facts and circumstances of this case, or the charge in assignment of error No. 30. The same proposition is presented in assignment No. 30.

The defendant denied all knowledge of the crime and set up as a defense an alibi. The main evidence for the State was Essie Handy. She testified: "Have been knowing Early Ashburn since he has been in Mr. Welch's store. He has all the time sorter talked out of the way to me. I paid no attention to that till in January, be two years this coming January, he offered me $10 and I took him up and went down in the basement. Before that he had not come out plain and said anything. The first time he had improper relations with me will be two years this coming January. This happened in the basement of the

store. All relations occurred in the basement. We then had light sig-
nals; he would turn on the light as notice for me to come. He sent me
several notes by my brothers. I told him in September there was some-
thing the matter with me. We continued the association then for a
while. He told me not to tell about my condition. He said he was
scared of his wife. I became positive of my condition in October. Told
him and he said he would take care of it, and when it was old enough
he would adopt it. I worked in the National Furniture Factory. Worked
from seven o'clock in the morning until six in the evening. On the day
before the birth of the baby that night, I was at the factory. Worked
up to the night the baby was born. My mother did not know my con-
dition. My mother went off somewhere and the boys went to the pic-
ture show, I reckon; they left. I washed the dishes after supper and
put my little boy to bed. I was suffering a great deal. I went to the
lower part of the sidewalk and Early Ashburn was on the other side
and I called him. He said, go on I will be there directly. I went back;
the child was born. He was with me. I heard him say, 'Don't holler.'
Do not know whether I was hollering or not. I did not know when the
child was born. I did not put the rag in the baby's throat. I did not
see anybody in the house except Early."

The child was found about six weeks after the birth in the pit of a
toilet of Sena Thomas, mother of Essie Handy, wrapped in a rag or
skirt.

Dr. Woltz testified for the State: "I am a licensed practicing phy-
sician. The child was a male child. When I saw it it had no clothes
on. I discovered a rag in its mouth and pulled it out. The rag was
twisted and pushed clear down its throat as far as it could go, and the
end was crammed in its jaws. When I pulled it out it left the throat
open down to the windpipe, packed in there and on either side, packed
in its jaws. The child was fully developed. I think the child was born
alive. It was strangled to death. The cord looked like it had been torn
off; no ligatures close to the abdomen. The child was right smartly
decomposed."

The court below charged the jury, in part, as follows: "The law does
not presume premeditation or deliberation, that must be proven by the
State beyond a reasonable doubt; but where there is an intentional use
of a deadly weapon that caused the death, the law presumes such killing
to be murder in the second degree. Now if a rag stuffed in the throat
can, by the manner of its use, cause death, it would become a deadly
weapon; and so if the jury should find beyond a reasonable doubt that
Early Ashburn stuffed a rag into the infant's throat and did cause death
in that way, then the law would presume malice from the use of a rag
in that manner, and would presume such killing to be murder in the

second degree. The burden would still be upon the State to prove premeditation and deliberation before it could convict of murder in the first degree, and the malice mentioned need not be express malice in the sense of hatred, ill-will or spite, but may mean an act from a wicked and diabolical heart, bent on mischief; that is what is meant by implied malice. And the State contends further that if you do not find him guilty of murder in the first degree, you should find him guilty of murder in the second degree, and that he, Early, stuffed the rag into the baby's throat and caused its death.

"Now the law says further, if a person forms a design to kill another but does not act simultaneously with the forming of the intent to kill, does the act so quickly after the forming of the intent to kill that there is no time for premeditation and deliberation over it, it is murder in the second degree, and so the State argues and contends that if you dismiss the charge of murder in the first degree that you should find him guilty of murder in the second degree, and argues and contends he had not deliberated upon it, and if there was no appreciable length of time between the forming of the design to kill and killing it, you should find that he, upon a sudden impulse when the baby was born, desiring to conceal the fact of its birth, destroyed its life, formed the intent suddenly and got a piece of rag or cloth and stuffed it into the baby's throat so quickly as that he caused the death simultaneously with the forming of the intent. That he did it in that manner, and that you should at least find if there was no deliberation or premeditation that there was an intentional killing."

There was no evidence of manslaughter. In S. v. Lane, supra, 339, it is said: "In all indictments for homicide, when the intentional killing is established or admitted, the law presumes malice from the use of a deadly weapon, and the defendant is guilty of murder (now in the second degree), unless he can satisfy the jury of the truth of the facts which justify or excuse his act, or mitigate it to manslaughter. The burden is on the defendant to establish such facts to the satisfaction of the jury, unless they arise out of the evidence against him. This rule has been uniformly adhered to by this Court in indictments for homicide." S. v. Levy, ante, 589.

We do not think the cases cited by defendant in the brief and supplemental brief applicable to the facts. There is no element of manslaughter that arises out of the evidence in this case. S. v. Smith, ante, 471.

Assignments of error Nos. 26, 27, 28 and 29 cannot be sustained as they relate to contentions, for the reasons given supra under assignment No. 24.

Under assignment 31 the defendant, in the brief, says: "His Honor told the jury that the defendant contends that Essie Handy was at least an accomplice of his and plead guilty of being an accomplice. Of course the defendant made no such contention, and to state this to the jury coming from the presiding judge was very prejudicial to the defendant."

The complete charge of the court on this aspect of the case is as follows: "Certain prayers of instructions have been asked by the defendant, some of which I have given you and others I will give. The court instructs you that you may convict on the unsupported testimony of an accomplice, but that it is dangerous and unsafe to do so, and the law says it must be after a careful and close scrutiny of the evidence of the accomplice. (*The defendant contends that Essie Handy was at least an accomplice of this man and she had plead guilty of being an accomplice, and that you should not convict on her unsupported evidence.*) That it would be unsafe to do so, and as the court instructs you, after careful scrutiny of it you find she was an accomplice, then her evidence should be carefully scrutinized. That in order to constitute corroborating evidence, the jury must be satisfied beyond a reasonable doubt that the facts relied upon as corroborating evidence existed or have been proven beyond a reasonable doubt, and unless the jury so find they cannot consider the evidence as corroborating, and therefore would reject the same. That is with reference to the evidence as admitted as corroborative evidence. In other words, evidence is not corroborative unless it does actually corroborate. It is a rule of law that while the evidence of an accomplice in the trial of a criminal cause is admissible upon the question of guilt, such evidence should be received by the jury with great caution. In order to convict the defendant the jury must be satisfied from the evidence beyond a reasonable doubt that the defendant Early Ashburn was present and actually killed the child, if it was killed, or aided and abetted in the killing, and unless the jury so find beyond a reasonable doubt they should return a verdict of 'Not guilty.' That the evidence offered by the State tending or which may tend to show illicit cohabitation can only be considered by the jury in furnishing a motive for the commission of the crime charged, and in order to convict the defendant the State must go further and prove beyond a reasonable doubt that the defendant, Early Ashburn, actually killed the child or aided and abetted in accomplishing the death of the child. In this case, as in all criminal actions, the defendant is presumed to be innocent of the crime charged, and this presumption of innocence follows the defendant through every stage of the trial, and it is incumbent upon the State to prove to the jury beyond a reasonable doubt every fact essential to his guilt, and if the State has failed in any such particular, it is the duty of the jury to return a verdict of 'Not guilty.' "

This assignment cannot be sustained as it relates to contentions, for the reasons given *supra* under assignment No. 24. If the defendant made no such contention he should have called the court's attention to it, so that the correction could be made at the time. The charge is fair and impartial.

The court below in the charge, as stated before, gave substantially the prayers for instructions. The court charged the jury: "They offer evidence as to character. Offer evidence of witnesses who say he was a man of good reputation, general reputation was good, what is termed general reputation; and that he had shown this by various persons who lived in and around the city of Mt. Airy who knew him and knew what reputation he had borne generally; and he contends that various witnesses went upon the stand and stated that his character was good, and that there has been no evil reputation or report about him up until this time. The jury may consider that in two lights as to him, first passing on the credibility of his evidence, whether or not he would swear falsely; when you come to weigh his evidence you may consider it in passing on his credibility as a witness. Also as substantive evidence, bearing on whether or not he would commit such crime. The law presumes that a man of good character would not be as apt to commit a crime as a man of bad character, and that is a matter for you to pass upon and say what weight you will give to the evidence of character, both as to the credibility of the testimony and also the substantive evidence as tending to show whether he would commit such a crime, and he contends that he has offered evidence by many witnesses who say they know him and that his character was good and had been for many years, and that this evidence as to character should be sufficient to raise a reasonable doubt in your minds as to whether he would commit an offense of this kind and whether he did commit an offense of this sort. Wherefore, he contends, it is argued to you that you should not find him guilty of any degree of offense here for that he has shown a complete alibi, showing he was elsewhere than at the place Essie Handy says he was at the time her child was born, and knew nothing about it. And furthermore, he has shown a motive on her part and a reason why she herself would destroy the child and that you should find that she herself destroyed it, and that the evidence tended to show that she did. In addition to that, she has pleaded guilty of manslaughter here in court, and that you should find that he not only did not commit this act alone, but that he did not aid or assist her in committing it."

While we can see no error in the trial, yet the conviction of defendant was almost entirely on the unsupported testimony of Essie Handy—from the entire record shown to be an accomplice. Her testimony shows the child was born on the evening of 11 May (Friday). She worked

until a quarter to six that day and went home and shortly afterwards, about dark, called the defendant Ashburn, who worked in a store of C. C. Welch, near by. She was shortly after delivered of the child, when the defendant Ashburn was present, and she became, according to her testimony, immediately unconscious and remained so until the next morning. At the time the child was born, her husband was living separate from her in Jonesboro, and had been away about two years, but came back after the happening. Her husband and mother were put in jail, and she said on cross-examination: "They are innocent. I let them stay in jail at Mt. Airy from 28 June to 2 July before I ever said a word about Early Ashburn. I hated to tell it on him. I was denying that I had a baby." Early Ashburn denied his guilt, proved a good character, and had many witnesses to testify to an alibi. The defendant admitted he was a married man and had illicit intercourse with Essie Handy, a married woman, who was living at the time separate and apart from her husband. On cross-examination Ashburn said: "Yes, I forgot every tie I owed my wife and every tie I owed to God that made me. Of course I knew it was not right. I had quit then. She quit coming and I stopped."

In *S. v. Miller*, 97 N. C., 487, *Davis, J.*, said: "It has been repeatedly laid down that a conviction on the testimony of an accomplice uncorroborated is legal, Roscoe's Criminal Evidence, 121; and this has been well settled as the law of this State, certainly since the cases of *S. v. Haney*, 19 N. C., 390; *S. v. Hardin, ibid.*, 407; *S. v. Holland*, 83 N. C., 624. It is, however, almost the universal practice of the judges to instruct juries that they should be cautious in convicting upon the uncorroborated testimony of an accomplice, and *Gaston, J.*, in *S. v. Haney*, says: 'The judge may caution them against reposing hasty confidence in the testimony of an accomplice. . . . Long usage, sanctioned by deliberate judicial approbation, has given to this ordinary caution a precision which makes it approach a rule of law.' If the unsupported testimony of the accomplice produce undoubting belief of the prisoner's guilt, the jury should convict." *S. v. Register*, 133 N. C., 746; *S. v. Shaft*, 166 N. C., 407.

The court below charged the law fully and cautioned the jury, "You may convict on the unsupported testimony of an accomplice, but *'that it is dangerous and unsafe to do so.'*" The charge was all, and perhaps more, than the defendant was entitled to.

It was a question of fact for the jury. Early Ashburn has been found guilty and Essie Handy entered a plea of guilty. As told in "The Heart of Midlothian" (by Sir Walter Scott), when Jeanie Dean plead for her sister Effie, convicted of infanticide, before Queen Caroline,

she said: "Alas! it is not when we sleep soft and wake merrily our-
selves that we think of other people's sufferings. Our hearts are waxed
light within us then, and we are for righting our ain wrangs and fight-
ing our ain battles. But when the hour of trouble comes to the mind
or to the body—and seldom may it visit your Leddyship—and when
the hour of death comes, that comes to high and low—lang and late
may it be yours!—O, my Leddy, then it isna what we hae dune for
oursells, but what we hae dune for others, that we think on maist
pleasantly."

We here can only pass "upon any matter of law or legal ·inference."
Upon the record we can find no prejudicial or reversible error in law.
No error.

CLARK, C. J. I concur in all respects with the very able opinion in
this case of *Mr. Justice Clarkson,* and most especially I wish to enter
my concurrence with what is said therein treating assignment of error
24, and again the reference to said assignment 24 in the discussion of
assignment 31, for the reason that the opinion of the Court in this case
in these respects ratifies and confirms what was said in the dissenting
opinion in *S. v. Love, ante,* 37-39, which, citing a long list of unbroken
decisions, holds as the present case does, that "If the court recites the
evidence of the contentions of the parties incorrectly, any objection must
be made at the time so as to give the judge opportunity to correct it,
and otherwise the objection is waived," here giving a long list of unbro-
ken authorities to that effect, and adding: "There are many others to
the same effect and not one to the contrary."

In that dissenting opinion it is further said, at page 39, which is con-
firmed by the Court in the present opinion: "These are all uniform
and unequivocal, and there is no reason why a special exemption from
so absolutely settled a rule should be made in favor of this defendant.
. . . The presumption of law is in favor of the correctness of the
ruling, and the impartiality of the presiding judge and of the jury"
(page 39).

In *S. v. Barnhill,* 186 N. C., 450, *Clarkson, J.,* speaking for a
unanimous Court, said: "If the recitals of the court were incorrect
as to the facts of the case, it was the duty of the defendant to call
the court's attention to it, so that the correction could be made then and
there. If this was not done at the time, the defendant cannot complain
and wait and except when the case is made up on appeal. The rule is
stated in *S. v. Baldwin,* 184 N. C., 791, as follows: 'We have so often
said that the statement of contentions must, if deemed objectionable,
be excepted to promptly, or in due and proper time, so that, if errone-

ously stated, they may be corrected by the court. If this is not done, any objection in that respect will be considered as waived. We refer to a few of the most recent decisions upon this question: *S. v. Kincaid,* 183 N. C., 709; *S. v. Montgomery,* 183 N. C., 747; *S. v. Winder,* 183 N. C., 777; *S. v. Sheffield,* 183 N. C., 783.' See *S. v. Williams,* 185 N. C., 666."