STATE v. JAMES ALBERT BAILEY, JR. AND LeROY JONES.

(Filed 12 April, 1961.)

**1. Criminal Law § 81—**

The testimony of an accomplice, whether supported or unsupported, is subject to the rule of scrutiny, since an accomplice is generally regarded as interested in the event.

**2. Criminal Law § 111—**

Where one witness has testified to facts establishing that he was an accomplice and there is testimony to the effect that two other witnesses were also accomplices, it is the duty of the court, upon apt request for special instructions, to charge the jury upon the rule requiring them to scrutinize the testimony of the admitted accomplice, and to scrutinize the testimony of the other two witnesses, if the jury should find them to be accomplices, and an instruction that it is dangerous to convict a defendant upon the unsupported testimony of an accomplice, is more than that to which the defendant is entitled.

**3. Criminal Law § 113—**

Where special instructions requested are not supported by the evidence, the court is not required to give such instructions either verbatim or in substance.

**4. Same—**

The court is not required to give special instructions requested in the language of the request even though the principle of law embodied therein arises upon the evidence, but the court is required to give the requested instructions in substance insofar as they arise upon the evidence and contain a correct statement of the applicable law.

**5. Homicide § 4—**

Murder in the perpetration or the attempt to perpetrate a robbery from the person is murder in the first degree, irrespective of premeditation or deliberation or malice aforethought.

**6. Criminal Law §§ 9, 10—**

An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender unites with him in the commission of the crime charged, either as a principal, as an aider and abettor, or as an accessory before the fact.

APPEAL by defendant LeRoy Jones from *Carr, J.,* March 1960 Term of SCOTLAND.

Criminal prosecution upon two separate indictments — one charging the defendant James Albert Bailey, Jr., with the felony of murder in the first degree of Frank Allred on 10 December 1959, and the other charging the defendant LeRoy Jones with the felony of murder in the first degree of Frank Allred on the same day.

Before the selection of the jury began the court ordered that the two indictments be consolidated for trial.

Each defendant entered a plea of Not Guilty.

Jury Verdict: As to the defendant James Albert Bailey, Jr., Guilty of murder in the first degree with a recommendation of mercy, according to the record. As to the defendant LeRoy Jones, Guilty of murder in the first degree.

A certified copy of the Minutes of the Superior Court of Scotland County by the clerk of the Superior Court of that county shows that in fact the verdict in the defendant Bailey's case was Guilty of murder in the first degree with recommendation of life imprisonment.

From a judgment of imprisonment for life in the State's prison, the defendant Bailey did not appeal. (S. v. Locklear, 253 N.C. 813, 117 S.E. 2d 763).

From a judgment of death, the defendant Jones appeals.

*T. W. Bruton, Attorney General, and Harry W. McGalliard, Assistant Attorney General, for the State.*
*Gilbert Medlin for defendant Jones, appellant.*

PARKER, J.   The State's evidence tends to show the following facts:

Defendant LeRoy Jones, 25 years of age, owns a Chevrolet automobile, and in December 1959 was living and working near Angier in Harnett County. On the morning of 10 December 1959 Jones, with Charles Thomas, 23 years of age, and defendant James Albert Bailey, Jr., 19 years of age, riding as passengers in his automobile, drove it to the home of Rellie Barber near Angier. William Gibson, 17 years of age, was there eating breakfast. After breakfast Gibson got in the automobile with Thomas and Bailey, and Jones drove it away. Jones asked Gibson about his pistol, saying something about killing hogs. Gibson told Jones his pistol was at the house of Pauline Covington. Jones drove to Pauline Covington's house, where Gibson got his pistol, and gave it and bullets to Jones. There was a jar of liquor in the pocket of the automobile.

Later on in the morning, Jones, with Thomas, Bailey, Gibson and one Hattie Mae McEachern in his automobile, drove to Scotland County. All four men were drinking. Upon reaching Scotland County Hattie Mae McEachern got out at her father's house. About 3:00 o'clock p.m. on this afternoon Jones was driving his automobile on U. S. Highway No. 1 between the towns of Marston and Laurinburg in Scotland County. Gibson was in the front seat, and Thomas and Bailey in the back seat. They stopped at a crossroads. At the time a Ford automobile with a trailer hitched to it was coming into the highway from a dirt road.

Charles Thomas testified in substance, except when we quote his language:

"LeRoy said, 'there comes a s. o. b. that (sic) has plenty of money.'" Jones drove on down the road, and the automobile with the trailer followed. "LeRoy said he was going to stop down the road and get that man's money. . . . I begged him not to bother the man." Jones drove on about a mile, parked his automobile on the shoulder, got out and waved the automobile with the trailer to stop. It stopped about 30 yards in front of Jones' automobile. Jones walked to the back of the trailer. The white man got out of his automobile with a paper sack. He had fruit in the trailer. Jones pulled a pistol out of his pocket and levelled it on him. The white man backed up four or five feet. While he was backing up, Jones called defendant Bailey to get out of the automobile and come to where he was. Bailey did so, but before he got to where Jones was, Jones shot the white man in the face. The white man fell backwards. Bailey got there, turned the white man over, and took a pocketbook out of his pocket. The man was dead. Bailey handed the pocketbook to Jones. There was a fishing tackle box in the front of the trailer, and Jones took it. Jones and Bailey got back in the automobile, and they left. There was some silver money in the fishing tackle box. Later, Jones opened the pocketbook, and it had some green money in it and a cheque made out for $36.00. That night Jones cashed the $36.00 cheque at S. J. Lindsey's store. Jones gave Bailey ten dollars. The white man's name was Frank Allred. He had only one arm. On cross-examination by Bailey's counsel Thomas testified he heard Jones tell Bailey "Get his pocketbook."

William Gibson testified in substance, except when we quote his language: We first noticed this automobile and trailer near the crossroads leading to the town of Marston. "LeRoy Jones said that he was going on down the road a little piece and stop that man because 'he has got plenty of money.'" A little farther down the road, Jones stopped, got out of his automobile, and flagged the peddler man to stop. The peddler man stopped his automobile on the same side of the road in front of Jones' automobile. Jones walked up to the trailer, and asked him about some oranges. The white man started to put oranges in a bag, and Jones pulled his pistol on him, and called Bailey to come to the trailer. Jones had Gibson's pistol in the peddler man's face. Just as Bailey was getting out of the automobile to go to Jones, Jones shot the peddler man, and he fell. Bailey turned the peddler man over, and took a pocketbook out of his hip pocket. Jones took a fishing tackle box out of the trailer. The peddler man was Frank Allred. Jones and Bailey got in Jones' automobile, and he drove away. Farther on down the highway Jones said: "If any of you tell any-

STATE *v.* BAILEY.

thing, I will let you have the other five balls. . . . I know that s. o. b. is dead, because I got him between the eyes." Later that night Jones cashed a cheque, gave Bailey ten dollars, and told him to keep it.

About 4:00 o'clock p.m. on this afternoon I. P. Brown was driving on U. S. Highway No. 1. He saw the dead body of Frank Allred lying in the highway behind a trailer hooked to an automobile. There was a hole in his forehead about as big as the end of Brown's little finger.

Dr. George O. Creed, a doctor of medicine, examined the dead body of Frank Allred at a funeral home. There was a penetrating wound between the eyes. He probed the wound, and the probe passed on through the skull into the anterior part of the skull. He found part of a bullet. In his opinion, Frank Allred's death was caused by the penetration of his skull by a lead bullet.

Frank Allred peddled fruit in the community. He cashed Mrs. Corinna Gibson's welfare cheque for $36.00. Jones, the night Allred was killed, cashed this cheque at S. J. Lindsey's store, receiving $33.00 in money and $3.00 in gas. He told Lindsey he had sold Mrs. Gibson a pig.

After the State rested its case, defendant Bailey testified in his own behalf in substance: He was present when Frank Allred was killed. Jones shot him and then he took a pocketbook out of Frank Allred's pocket.

After defendant Bailey had testified in his own behalf, defendant Jones testified on direct examination in his own behalf in substance, except when we quote his language: After they left the town of Angier, "all the while, Bailey, Gibson and Thomas were talking about getting some 'fast' money, and I asked him what he meant. He said, 'I mean to stick somebody up for it.' I said 'I ain't never done nothing like that.'" He stopped his automobile on the edge of the woods below Mr. Gordon's store, took whiskey out of the automobile, and at Bailey's request let him have his car. Bailey said he would be back in 10 or 15 minutes. While they were gone, he sat down at the edge of the woods, and took another drink. In a little while Bailey, Thomas and Gibson came back. Thomas was driving my car. Jones said he would do the driving, and went to his house. When they arrived there and got out, Gibson had something covered up with Thomas' coat. When they got in Jones' house, Gibson pulled out a basket and emptied it on the bed. When he did this, Jones said, "I know now where you all have been." "They admitted they robbed Mrs. Dupree, but did not say a word about shooting her." Later on all four of them with Hattie Mae McEachern left in Jones' automobile for Scotland County. They put her out at her father's home in Scotland County. He went by to see his wife, and then to Paradise Inn. They left there

and on their way to the town of Ellerbe they came upon an automobile with a trailer. Jones knew the driver was Frank Allred, and Allred knew him. He did not say "there is a s. o. b. who has plenty of money." Bailey asked him to stop so he could get some oranges and food. He stopped the car. Bailey got out, went to Allred at the trailer, and said he wanted to buy some oranges. Jones remained seated under the steering wheel with the engine running. When Allred reached and got a paper sack, Bailey suddenly drew a pistol on Allred, and told him he did not want any damned oranges, that he wanted his money. Allred sort of smiled, and used his hand to push Bailey away from him. When he did this, Bailey shot him, and he fell. Bailey reached down, and took his pocketbook. Thomas, who was near the trailer with Bailey, took the fishing tackle box off the trailer. Both came back, and jumped in the car. Jones did not have his hands on the pistol but one time during the day, and that was when Bailey asked him to get rid of it after he had shot Allred. Later on that night Jones pawned the pistol in a gambling game at Charlie Jones' home. A $36.00 government cheque was in the fishing tackle box. Later on that night Jones cashed this cheque at S. J. Lindsey's store, telling him he had sold a hog to Mrs. Corinna Gibson. Lindsey gave Jones $33.00 in money, and took out $3.00 for gas. They split the money: Bailey taking $10.00, Jones keeping $10.00, and the balance was divided between Thomas and Gibson. Jones does not know who killed Mrs. Dupree, because he was not there. "I'm an accessory before and after the fact because I hauled these men around after I knew that Bailey had killed Mr. Allred. I am guilty of being an accessory after the fact of robbery because they told me they had robbed Mrs. Dupree." On cross-examination by defendant Bailey's counsel, he said it was Gibson's pistol. Gibson was talked into letting his pistol be pawned in the card game. He was talked into cashing the $36.00 cheque at S. J. Lindsey's store, because Lindsey knew him, and did not know the other men. On cross-examination by the solicitor for the State, Jones said in substance: After Allred was shot, Bailey got in his car on the back seat. He had Allred's pocketbook, took the money out, and put the pistol in his pocket. It looked like $25.00 or $30.00. They drove into a pine thicket. Bailey and Thomas gave him, Jones, $5.00.

Defendant LeRoy Jones assigns as error the refusal of the trial judge to give to the jury his following written prayers for special instructions tendered to the judge at the close of all the evidence, and before the commencement of argument of counsel:

"1. In North Carolina a defendant may be convicted upon the unsupported testimony of an accomplice, if the jury is satisfied from such testimony and beyond a reasonable doubt of his guilt; and, in

this case, the witnesses William Gibson, Charles Thomas and James Albert Bailey, Jr., are which is known in law as accomplices; and their testimony as to the guilt of the defendant is unsupported by any other evidence.

"2. However, the Court further instructs you that it is dangerous to convict a defendant upon the unsupported testimony of an accomplice; that it will be dangerous to convict the defendant in this case upon the testimony of William Gibson, Charles Thomas and James Albert Bailey, Jr., although it is your duty to do so if their testimony has satisfied you beyond a reasonable doubt of the defendant's guilt; and that is your duty to scrutinize their testimony with caution and with care and in the light of their interest and bias, if any, in the case."

It bears against the credibility of a witness that he is an accomplice in the crime charged and testifies for the prosecution, and he is generally regarded as interested in the event. *S. v. Hale,* 231 N.C. 412, 57 S.E. 2d 322; *S. v. Roberson,* 215 N.C. 784, 3 S.E. 2d 277. "The rule of scrutiny, therefore, applies to the testimony of an accomplice whether such testimony be supported or unsupported by other evidence in the case." *S. v. Hale, supra.*

In *Rex v. Jones,* 2 Camp., 131, 132, Lord Ellenborough observed: "No one can seriously doubt that a conviction is legal, though it proceed upon the evidence of an accomplice only. Judges in their discretion will advise a jury not to believe an accomplice, unless he is confirmed, or only in as far as he is confirmed; but if he is believed, his testimony is unquestionably sufficient to establish the facts which he deposes. It is allowed, that he is a competent witness; and the consequence is inevitable, that if credit is given to his evidence, it requires no confirmation from another witness." In his comment upon this case *Judge Gaston* said in *S. v. Haney,* 19 N.C. 390: "We are not aware of any judicial decision in our country, at variance with the rule brought hither by our ancestors." This Court has consistently adhered to that rule as to its being a matter of the trial judge's discretion, in the absence of a request to charge the rule, from Judge Gaston's day to ours, and the trial judge is not required to charge on the rule in the absence of a request to do so, and his voluntary reference to it rests in his sound discretion. *S. v. Holland,* 83 N.C. 624; *S. v. Miller,* 97 N.C. 484, 2 S.E. 363; *S. v. Ashburn,* 187 N.C. 717, 122 S.E. 833; *S. v. Herring,* 201 N.C. 543, 160 S.E. 891; *S. v. Wallace,* 203 N.C. 284, 165 S.E. 716; *S. v Kelly,* 216 N.C. 627, 6 S.E. 2d 533; *S. v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909; *S. v. Hale, supra; S. v. Hooker,* 243 N.C. 429, 90 S.E. 2d 690; *S. v. Stevens,* 244 N.C. 40, 92 S.E. 2d 409; *S. v. Andrews,* 246 N.C. 561, 99 S.E. 2d 745. A refusal

by the trial judge to instruct the jury on this rule of scrutiny as to the testimony of an accomplice or accomplices, when requested by defendant in apt time to do so, is prejudicial error. *S. v. Hooker, supra.* See also cases above cited as to this rule of scrutiny.

The prayers for special instructions in this case are quoted above, were tendered to the trial judge by defendant's counsel in apt time, and are in the identical language of the prayers for special instructions in *S. v. Hooker, supra,* with the exception of the names of the alleged accomplices. It is a well established rule with us that if a request is made for a specific instruction as to the rule of scrutiny in the event of an accomplice testifying for the prosecution, which is correct in itself and supported by evidence, the trial judge, while not required to parrot the instructions "or to become a mere judicial phonograph for recording the exact and identical words of counsel," must charge the jury in substantial conformity to the prayer. *S. v. Henderson,* 206 N.C. 830, 175 S.E. 201; *S. v. Hooker, supra.*

The first prayer for specific instructions requested by defendant Jones is not supported by the evidence, in that it contains the explicit statement that William Gibson and Charles Thomas are accomplices in the crime charged against Jones, and the testimony of each does not admit he is an accomplice, although Bailey's testimony admits he is an accomplice. For this reason it was not error to fail to give the first prayer for specific instructions verbatim or in substance.

The second prayer for specific instructions to the effect that it is dangerous to convict upon the unsupported testimony of an accomplice, and it will be dangerous to convict defendant Jones upon the testimony of William Gibson, of Charles Thomas, and of James Albert Bailey, Jr., is more than defendant Jones was entitled to as a matter of law, if Gibson, Thomas, and Bailey are accomplices. *S. v. McKeithan,* 203 N.C. 494, 166 S.E. 336; *S. v. Ashburn, supra. S. v. Hooker, supra,* does not overrule or modify *S. v. McKeithan, supra.* The *Hooker* case merely states the specific prayer for instructions there finds support in *S. v. Barber,* 113 N.C. 711, 18 S.E. 515; *S. v. Williams,* 185 N.C. 643, 116 S.E. 570; *S. v. Ashburn, supra.* In the *Barber* case, the Court said: "The defendant had no just ground to complain of the instruction 'that they (the jury) might convict on the unsupported testimony of an accomplice, but that it was dangerous and unsafe to do so; etc.'" In the *Williams* case, the trial judge charged the jury in substantial accord as to the testimony of an accomplice in the *Barber* case, and the Court said: "What more could he have said, or how better could he have said it?" The Court cited no authority to support such a statement. In *S. v. Ashburn, supra,* the trial judge charged: "You may convict on the unsupported testi-

mony of an accomplice, but *that it is dangerous and unsafe to do so.*" In respect to that charge this Court said: "The charge was all, and perhaps more, than the defendant was entitled to."

Defendant LeRoy Jones was tried on an indictment charging murder in the first degree in the language of G.S. 15-144. This indictment includes the charge of murder committed in the perpetration of a robbery. *S. v. Smith,* 223 N.C. 457, 27 S.E. 2d 114. G.S. 14-17 specifically provides, that "a murder . . . which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, shall be deemed to be murder in the first degree and shall be punished with death." The statute contains a proviso as to imprisonment for life, if the jury so recommend in its verdict.

When a murder is committed in the perpetration or attempt to perpetrate a robbery from the person, G.S. 14-17 pronounces it murder in the first degree, irrespective of premeditation or deliberation or malice aforethought. *S. v. Alston,* 215 N.C. 713, 3 S.E. 2d 11; *S. v. Kelly, supra, S. v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340; *S. v. Bunton,* 247 N.C. 510, 101 S.E. 2d 454. The evidence for the State tends to show that defendant LeRoy Jones shot and killed Frank Allred while perpetrating a robbery from his person. *S. v. Alston, supra; S. v. Maynard, supra.*

It seems that the various definitions of the term "accomplice" convey the same idea, that an "accomplice" is a person who knowingly, voluntarily, and with common intent with the principal offender unites with him in the commission of the crime charged, either as a principal, as an aider and abettor, or as an accessory before the fact. The generally accepted test as to whether a witness is an "accomplice" is whether he himself could have been convicted for the offense charged, either as a principal, or as an aider and abettor, or as an accessory before the fact, and if so, such a witness is an accomplice within the rules relating to accomplice testimony. *McLendon v. United States,* 19 F. 2d 465, where Federal and State cases are cited; *Guthrie v. Com.,* 171 Va. 461, 198 S.E. 481, 119 A.L.R. 683; Wharton's Criminal Evidence, 12th Ed., Vol. II, § 448, p. 229; Black's Law Dictionary, 4th Ed., p. 33; 14 Am. Jur., Criminal Law, § 108 and § 109; 22 C.J.S., Criminal Law, § 786. The more generally accepted view is that an accessory after the fact is not an accomplice. 22 C.J.S., Criminal Law, § 792.

All the evidence in the case, including his own, shows that James Albert Bailey, Jr. was an accomplice in the crime charged against defendant Jones, and he was found guilty by a jury of the murder of Frank Allred as a principal.

The testimony of defendant LeRoy Jones tends to show that William Gibson, Charles Thomas and James Albert Bailey, Jr. were all accomplices in the crime charged against him, LeRoy Jones.

A skeptical approach to accomplice testimony is a mark of the fair administration of justice. Lord Cobham's misplaced hope for immunity that caused him to give testimony that helped send Sir Walter Raleigh to the Tower and to the scaffold is on the same level with the hope of some other poor wretch who endeavors to save his life or to preserve his liberty by laying the entire blame of a crime on a friend or an associate. Howell, State Trials, Vol. 2, London 1816, The Trial of Sir Walter Raleigh, Knt. at Winchester, for High Treason: I James I, 17th of November, A.D. 1603, pp. 1-62; Catherine Drinker Bowen, "The Lion and the Throne — The Life and Times of Sir Edward Coke," Chapters XV, XVI, Trial of Sir Walter Raleigh, pp. 190-217; Philip Magnus, "Sir Walter Raleigh," pp. 111-153. The aged Lord Chief Justice of England Sir John Popham before passing sentence of death on Sir Walter Raleigh said, "I never saw the like Trial, and hope I shall never see the like again." Howell, *ibid,* p. 31. Mr. Justice Gawdie, another of the professional judges who sat with the Chief Justice and the Commissioners during the trial, on his deathbed declared that Sir Walter Raleigh's trial had degraded English justice, Magnus, *ibid,* p. 120.

The trial court refused to give to the jury defendant Jones' prayers for instructions tendered in apt time, and further he did not charge the jury at all in respect to the rule as to accomplice testimony. The learned judge in failing to charge the rule as to accomplice testimony, a request for such having been made in apt time, committed prejudicial error.

The trial judge should have instructed the jury in respect to the testimony of Bailey in substance as follows: The court instructs you in passing upon the testimony of Bailey you should scrutinize it closely, whether it is supported or unsupported, and you should only believe the same, if you do believe it, after careful and cautious consideration, and your consideration of his testimony should be in connection with the fact that he, Bailey, is interested in the event, and with the further fact that he, himself, upon his own admission, is guilty as an accomplice of the crime charged against defendant Jones.

The trial judge should have instructed the jury in respect to the testimony of Gibson and Thomas in substance as follows: The court instructs you that if you merely find from the evidence that Gibson and Thomas are accomplices, or that either one of them is an accomplice, in the crime charged against defendant Jones, as a principal, or as an aider and abettor, or as an accessory before the fact, then

you should scrutinize closely the testimony of such witness or witnesses as you find is an accomplice, or are accomplices, whether his testimony or their testimony is supported or unsupported, and you should only believe the testimony of such as you find is an accomplice, if you do believe it, after careful and cautious consideration, and your consideration of such testimony should be in connection with the fact that an accomplice is interested in the fact, and with the further fact that you have found that such witness is guilty as an accomplice, either as a principal, or as an aider and abettor, or as an accessory before the fact, in the crime charged against defendant Jones.

Defendant Jones is entitled to a new trial, and it is so ordered.

New trial.