STATE OF NORTH CAROLINA v. JOHNNY JAMES BLACKMON

No. 87

(Filed 15 December 1971)

1. Criminal Law § 15— change of venue — pretrial publicity

The trial court in a homicide prosecution properly acted within its discretion when it denied defendant's motion for a change in venue or for a special venire on the ground that he had been prejudiced by pretrial publicity, since (1) the newspaper articles offered in support of the motion did not discuss the details of any evidence against the defendant and (2) there was no evidence to show that any of the jurors had been unduly influenced by the articles.

2. Criminal Law § 91— motion for continuance — defendant's request for certain reports

A motion for continuance on the ground that defense counsel had not seen certain reports which he had requested from the State *is held* properly denied by the trial court in a homicide prosecution, where (1) the solicitor stated that he had furnished defense counsel all the reports and photographs of which he had knowledge and (2) the defense counsel had one month and four days in which to prepare his defense.

3. Criminal Law § 75— admissibility of confession — waiver of counsel during in-custody interrogation

The trial court in a homicide prosecution erred in holding that, since the defendant had been correctly informed of his right to counsel at an in-custody interrogation and did not request an attorney, defendant's making of incriminating statements during the interrogation was a waiver of the right to the presence of counsel; the *Miranda* decision requires that the wavier of the right to counsel be knowingly and intelligently made.

4. Criminal Law § 76— confession — determination of admissibility — voir dire — conflict in testimony

The conflict in the testimony on the voir dire raises a question of the credibility of the witnesses, which is for the determination of the trial court, and its findings of fact, supported by competent evidence, are conclusive.

5. Criminal Law § 169— erroneous admission of confession — prejudicial error

In a first-degree murder prosecution, the erroneous admission in evidence of defendant's incriminating statements to an S.B.I. agent required a new trial, notwithstanding there was other evidence sufficient to support a conviction.

APPEAL by defendant from *Long, J.,* at the 29 March 1971 Session of STANLY Superior Court.

---

State v. Blackmon

---

Defendant, Johnny James Blackmon, was tried and convicted on an indictment proper in form of murder in the first degree of James Alexander Howell, the jury making no recommendation that he be sentenced to life imprisonment. Defendant appeals from a judgment imposing the sentence of death by asphyxiation pursuant to the verdict.

The State's evidence tended to show that on 5 January 1971 James Alexander Howell and his wife awoke at approximately 5:30 a.m., and after having breakfast, Mr. Howell left to drive to work. When his wife did not hear the door to their truck slam, she looked out a window and saw the empty truck. After calling to her husband and receiving no answer, she became worried and called a neighbor, Mr. Gene Almond. When Mr. Almond arrived, Mrs. Howell came out of the house and they discovered the body of Mr. Howell lying face down alongside his truck. Mr. Howell died shortly thereafter, and an autopsy revealed that the death resulted from a shotgun wound in the left chest. Later that day, police investigators discovered shoe tracks at the Howell residence in the vicinity of the shooting, and casts were made of the impressions. A Halloween mask was also found near a path about 140 feet from the house.

On 19 February 1971 about 5:40 a.m. Sheriff Ralph McSwain and two other officers went to defendant's home and placed him under arrest on a capias which had been issued on 21 January 1971 for him on a worthless check charge. Defendant when arrested was wearing a pair of Army fatigue pants, an undershirt, and a pair of Converse All-Stars tennis shoes. He was allowed to change clothes, including his shoes, and the tennis shoes which he had been wearing were taken by Sheriff McSwain along with the defendant to the Stanly County jail. On arriving at the jail, a warrant which had been issued on 18 February 1971 charging defendant with the murder of James Alexander Howell was served on him.

Defendant was taken to an interrogation room about 6 a.m. and questioned about the murder. The three officers involved in the questioning stated that defendant was orally advised of his rights, and that he stated that he understood these rights. (At the trial on *voir dire,* defendant denied that he was so advised.) At 10 a.m., about four hours after the initial questioning began, one Craven Turner was brought into the interview room with the defendant. Turner said that he and the defendant had gone

to Howell's house earlier that morning to rob him, and that the defendant shot Howell during the robbery. Defendant denied this and retorted that it was Turner who had shot the deceased. Turner was then taken from the room and the defendant made a full statement in the presence of Sheriff McSwain, and Jack B. Richardson and Jack Coppley, both agents of the State Bureau of Investigation. Defendant stated that about a month prior to the date of the robbery (January 5, 1971) Craven Turner had contacted him about the robbery stating that Howell was known to carry large sums of money on his person. Defendant further stated that the day before the robbery Turner drove the defendant out to look over the house in which Howell lived. On the day of the robbery, Turner picked up the defendant about 4:45 a.m., and they drove to a point near the Howell home, where they parked the car. Turner put on a Halloween mask, and the defendant covered his face with a paper bag. They then crossed a field to the edge of some woods where the defendant waited while Turner walked around the house and hid near some shrubbery. Defendant stated that he heard a shot and soon thereafter Turner came running back to the woods. Turner told the defendant that as he was attempting to rob the deceased, Howell reached for his pocket and that Turner, thinking that Howell had a gun, shot him in the leg. They then ran back to the car, falling on the way and losing the Halloween mask and paper bag.

After the defendant completed his statement, the police showed him a 12-gauge single-barrel sawed-off shotgun and a Halloween mask. Defendant stated that he owned the gun at the time it was used in the robbery, and that the mask he was shown was the one used in the robbery. The defendant then signed a written waiver form giving his consent for the police to search his home. The search produced one unspent 12-gauge shotgun shell, which was shown at the trial to fit the shotgun used to shoot Howell.

The defendant subsequently accompanied Sheriff McSwain and the two State Bureau of Investigation agents to the Howell home where he re-enacted the crime for these officers, showing them the place where the car was parked, the path he and Turner followed to the woods near the house, the place where he was standing, the shrubbery where Turner was hiding when

he shot Mr. Howell, and the places where he and Turner fell while fleeing the scene after the shooting.

The defendant offered no evidence.

*Attorney General Robert Morgan and Deputy Attorney General Ralph Moody for the State.*

*Elton S. Hudson for defendant appellant.*

MOORE, Justice.

[1] Defendant first assigns as error the trial court's failure to allow defendant's motion for a change in venue or in the alternative for a special venire. In support of this motion defendant and his counsel filed affidavits. The affidavit of defendant's counsel stated that he had asked 47 individuals if they had seen or heard pre-trial publicity concerning the case. Of those interviewed 89.4% had seen or heard the publicity. Of the 42 persons who had seen or heard the publicity, 34 expressed the opinion that the defendant was guilty and stated that they thought it was the general feeling in Stanly County that the defendant was guilty. The names of those interviewed were not disclosed and none of them filed affidavits. The affidavit of defendant stated that the Stanly News and Press is the only newspaper published in Stanly County and is widely read and circulated in the County. Attached to the motion were various articles concerning the crime in question which had been published in this newspaper. The newspaper articles did not discuss the details of any evidence against the defendant but only that Mr. Howell was killed and that a shotgun was used in the killing, and the fact that defendant and Craven Turner had been arrested and charged with the crime. The State examined seven witnesses—two law-enforcement officers and five who had been in various businesses in Stanly County for many years—all of whom expressed the opinion that the defendant could get a fair trial in that County.

Prospective jurors were examined concerning whether or not they had been influenced by any articles in the newspaper. This examination showed that several jurors had not read about the case at all and that some had read about it when it first happened. There was no evidence to show that any juror had been unduly influenced by these articles or that there had been

any inflammatory press reports. A motion for change of venue or a special venire is addressed to the sound discretion of the trial judge, and an abuse of discretion must be shown before there is any error. Here, no such abuse is shown. *State v. Ray,* 274 N.C. 556, 164 S.E. 2d 457 (1968) ; *State v. Brown,* 271 N.C. 250, 156 S.E. 2d 272 (1967) ; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967) ; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453 (1967) ; *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341 (1967).

[2] Defendant next assigns as error the trial court's denial of defendant's motion for a continuance. Defendant was arrested and a warrant charging him with the murder of James Alexander Howell was served on him on 19 February 1971. Defendant was indicted at the 22 February 1971 Session of the Superior Court of Stanly County, and Elton S. Hudson was appointed as attorney for defendant on 24 February 1971. Defendant's trial began on 29 March 1971. Counsel for defendant had one month and four days in which to prepare for the defense of his client. Defendant's motion for continuance is based on allegations that counsel had not seen certain reports which he requested in a motion for a bill of particulars. In an answer to the motion for the bill of particulars, the solicitor stated that defendant's counsel had been furnished 32 photographs, four reports made by agents of the State Bureau of Investigation, and a list of 20 prospective witnesses for the State, and that he had no knowledge of other evidence. A motion for continuance is ordinarily addressed to the sound discretion of the trial court and its ruling thereon is not subject to review on appeal absent an abuse of discretion. No abuse is shown in this case. *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970) ; *State v. Ferebee,* 266 N.C. 606, 146 S.E. 2d 666 (1966) ; *State v. Kirkman,* 252 N.C. 781, 114 S.E. 2d 633 (1960) ; *State v. Flowers,* 244 N.C. 77, 92 S.E. 2d 447 (1956) ; 6 N. C. Digest, Criminal Law § 586.

[3] Defendant next assigns as error the admission of defendant's statement in the nature of a confession in evidence against him. This assignment presents a serious question. A warrant charging defendant with the first degree murder of Howell was issued on 18 February 1971. On the morning of 19 February 1971 about 6:05 a.m., this warrant was served on defendant who was then in custody in the Stanly County jail. Defendant was advised of his constitutional rights as required under

*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), and was then questioned by Sheriff Ralph Mc-Swain about the murder. Defendant stated that he knew nothing about it. The sheriff then left, but defendant was kept in custody for some four hours thereafter during which time other officers questioned him. Sheriff McSwain returned about 10 a.m. and again questioned defendant who, after being confronted with his accomplice Craven Turner, made a detailed statement concerning his participation in planning the robbery and in the shooting of Mr. Howell, and later that same day accompanied the officers to the Howell home where he re-enacted the crime for the officers.

Agent Richardson took notes on the statement made by defendant and was called to testify as to this statement. On objection by defendant, a *voir dire* was held.

Each of the three officers present at the interrogation testified on voir dire that after the defendant was taken into custody upon another charge, a warrant charging him with this murder was served upon him, and thereafter, prior to his making any statement, he was twice given the full *Miranda* warning. Each officer testified that the defendant "did not request that an attorney be present," that no threats were made to the defendant, that no promise or inducement was made to get him to make any statement, and that the defendant did not appear to be confused and stated that he understood his rights.

The defendant testified upon the *voir dire* that he was not advised by any law enforcement officer that he had the right to have an attorney present during the interrogation, that he told the officers he wanted to talk to a lawyer and that they replied that it was too early in the morning to get a lawyer.

At the conclusion of the *voir dire,* the court found as facts that the defendant was taken into custody on a worthless check charge, that within a few moments thereafter the sheriff read to the defendant a warrant charging him with this murder and advised the defendant of his rights by giving him the full *Miranda* warning, including his right to have an attorney present during the interrogation and his right to have such attorney appointed before any questioning if he could not afford to employ one. The court further found that the defendant "did not request . . . the presence of an attorney," that he "stated that

he understood his rights," that in the course of the interrogation he made certain statements which were reduced to writing by Agent Richardson, and that such statements were made "freely and voluntarily by him, understandably, and without promise of reward, without duress, without coercion, and without pressure."

Upon these findings of fact the court concluded that the statements by the defendant were made freely, voluntarily and understandably, without promise or hope of reward and without duress, pressure or coercion, and that they "were made understandably, with full knowledge of his right to remain silent, of his right to talk to an attorney, and to have an attorney present at the time; and his right to have a State appointed attorney, if he could not afford one of his own." The court further concluded that the defendant "made such statements in waiver of said rights." The court then denied defendant's motion to suppress evidence of any such statements made by him.

[4]  The conflict in the testimony on the *voir dire* raised a question of credibility of the witnesses, which was for the determination of the trial court. His findings of fact, supported by competent evidence, are conclusive. *State v. McRae,* 276 N.C. 308, 172 S.E. 2d 37 (1970) ; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966). Consequently, we must take it to be established that the defendant was given the full *Miranda* warning, that he understood his right to counsel and that he did not request the presence of an attorney at the interrogation. This, however, is not sufficient to make the defendant's in-custody statements admissible in evidence. In *Miranda v. Arizona, supra,* the Supreme Court of the United States said:

> "The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process. A once-stated warning, delivered by those who will conduct the interrogation, cannot itself suffice to that end among those who most require knowledge

of their rights. A mere warning given by the interrogators is not alone sufficient to accomplish that end. . . .

\*     \*     \*

"An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given. . . .

\*     \*     \*

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. . . .

\*     \*     \*

"After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

This decision of the Supreme Court of the United States as to the right of the defendant, under the Federal Constitution, to have counsel present at his in-custody interrogation and as to the prerequisites for a waiver of that right is, of course, binding upon the courts of this State. *State v. Thorpe,* 274 N.C. 457, 164 S.E. 2d 171 (1968) ; *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 (1968).

The trial judge erred in holding that, since this defendant had been correctly informed of his right to the presence of counsel at the interrogation and did not request it, the making of the statements by the defendant during the interrogation was a waiver of his right to have counsel present. Although the evidence at the *voir dire* is ample to support a finding that the defendant made the statements in question freely and voluntarily, having been fully advised of and having full understand-

ing of his right to have an attorney present, the plain language of the *Miranda* decision above quoted in addition requires a waiver of right to counsel knowingly and intelligently made by defendant. ". . . [F]ailure to ask for a lawyer does not constitute a waiver."

[5]   The testimony of Agent Richardson of the State Bureau of Investigation concerning statements made by defendant in the course of the in-custody interrogation by Sheriff McSwain was clearly incriminating, and its admission was error which cannot be considered harmless.

The United States Supreme Court in *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), stated: ". . . [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." The Court also stated that while "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," not all "trial errors which violate the Constitution automatically call for reversal."

Where, as in the present case, a confession made by the defendant is erroneously admitted into evidence, no one can say what weight and credibility the jury gave the confession. Even though there is other evidence sufficient to support a conviction, we cannot say beyond a reasonable doubt that the error in admitting the confession did not materially affect the result of the trial to the prejudice of the defendant or that it was "harmless error." Error in the admission of this evidence requires a new trial.

Since the defendant is entitled to a new trial under *Miranda,* we do not consider the effect of G.S. 7A-457, which was amended by the 1971 Adjourned Session of the General Assembly, on the admission of defendant's statement.

For the reasons indicated, there must be a new trial.

New trial.