STATE OF NORTH CAROLINA v. JOHN WAYNE SHELTON

No. 7321SC313

(Filed 11 July 1973)

1. Criminal Law § 43— photographs of crime scene — admissibility for illustration

Trial court in a safecracking case properly admitted photographs of the premises broken into where the photographs were identified by the owner of the premises and illustrated his testimony as to the location of the safe, layout of the building, markings on the floor and various items scattered around the building.

2. Criminal Law § 112; Safecracking — sufficiency of accomplice testimony alone — instructions

Trial court's instruction to the jury to be cautious in examining an accomplice's testimony was a sufficient instruction, particularly since the evidence of the accomplice was supported by other evidence.

3. Criminal Law § 86— cross-examination of defendant — inquiry as to prior crimes

Trial court in a safecracking case properly allowed the State to cross-examine defendant as to whether he had committed prior break-ins with his alleged accomplice in the crime under consideration.

4. Criminal Law § 91— motion for continuance — basis unstated — denial proper

Where defendant's motion for continuance was made at the beginning of his trial but the basis therefor was not stated, defendant

State v. Shelton

was not prejudiced and the trial court did not abuse its discretion in denying the motion, though defendant suggested after the verdict was in and judgment entered thereon that he had not been notified by the solicitor which of the several cases against him calendared for that session would be tried.

APPEAL by defendant from *Wood, Judge,* 16 October 1972 Session of Superior Court, FORSYTH County.

Defendant was charged in a bill of indictment with attempted safecracking and entered a plea of not guilty. At trial the State introduced evidence which tended to show the following:

On 28 September 1971 at approximately 1:30 a.m., officers of the Winston-Salem Police Department arrived on the premises of Builder's Harbor, Inc., in response to a call that there was a breaking and entering in progress. As they arrived, the officers observed a white male running in front of the building. The officers gave chase and caught the subject who was later identified as Eddie Ray Spivey. After placing Spivey under arrest the officers entered the building. The front door had been pried open and a safe combination dial, a broken safe hinge, a hammer and a screwdriver were found in an inner office area. Scratch marks were observed on the floor leading to the rear of the building where the officers found a large black safe. A loaded 32-caliber revolver, a flashlight, a hatchet and a tire tool were found near the safe. The hinges were off the safe as well as the handle which opened the safe door, and the owner of Builder's Harbor, Emory Crawford, testified that there were marks on the safe that hadn't been there the evening before when he closed for business. With the exception of the gun and flashlight, the tools found scattered about the premises were taken from the inventory of Builder's Harbor.

The officers then proceeded through the building and out the front door where they found a 1968 Plymouth automobile parked in front of the building. Later it was determined that the automobile was registered in the name of the defendant, John Wayne Shelton. The key was in the ignition switch and the hood was still warm. A screwdriver and pry-bar could be seen on the floorboard inside the car. Officers then opened the car and searched inside. A wallet was found in the dash with identification showing that defendant was the owner.

Since another suspect had been seen running from the premises a bloodhound was called to the scene in an attempt

to pick up the subject's trail. The bloodhound led officers to a service station where one of the attendants told officers that he had given a ride to two strangers who were later determined to be AWOL servicemen and not in any way connected with the break-in at Builder's Harbor. Meanwhile Officer S. L. Harmon checked the Builder's Harbor building for fingerprints and one print of defendant Shelton was detected on the butt of the flashlight found near the safe.

Eddie Ray Spivey took the stand and testified that in the early evening hours of 27 September 1971, he and defendant were drinking beer and shooting pool at the Ardmore Taproom. They left the taproom and went to a chicken place called the Wishbone where they broke in and took some money and a gun. They then proceeded to Builder's Harbor, broke open the front door and attempted to open the safe they found in one of the inner offices. They knocked the combination dial off the safe and attempted to take the safe door off its hinges. Being unsuccessful they dragged the safe to the rear of the building and were trying to open it when police officers arrived at the scene. Both men ran from the building, and defendant was not caught by the officers.

The gun found at Builder's Harbor was identified by the owner of the Wishbone as being the one missing from his premises after the break-in on 27 September.

The State rested and in brief summary the following evidence was presented by defendant:

On the evening of 27 September 1971 defendant and Eddie Ray Spivey were drinking beer at the Ardmore Taproom and at about 8:30 defendant left with Doris Miller. Since defendant felt he had had too much to drink he asked Doris to drive her own car and gave the ignition key to his own vehicle to Spivey. Defendant and Doris went to another night spot and then went to Spivey's trailer near Stanleyville at approximately midnight. Defendant testified that no one was at home and that he and Doris watched the late show on TV before retiring for the night. The next morning defendant heard on the news that Spivey had been apprehended and then called the police to report that his automobile was missing. Defendant also offered testimony that tended to show the presence of the two AWOL servicemen in the area of Builder's Harbor on the night in question.

On State's rebuttal, Cathy Spivey, wife of Eddie Ray Spivey, testified that on 27 September 1971 before she and Eddie were married, she was living at Eddie's trailer. Vicky. McBride and Doris Miller stopped in that evening for approximately 15 minutes and they were the only visitors she had all night. She also testified there was no TV in the trailer. The next morning defendant Shelton called and informed her that Eddie had been apprehended by the police at Builder's Harbor and that he had been with Eddie but had eluded the officers.

The case was submitted to the jury who found defendant guilty. Judgment was entered imposing an active sentence of not less than 15 nor more than 25 years from which defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Weathers, for the State.*

*H. Glenn Pettyjohn for defendant appellant.*

MORRIS, Judge.

Defendant brings forward 17 assignments of error in his brief. However, he has not set forth any properly numbered exceptions upon which those assignments of error are based as required by Rule 28, Rules of Practice in the Court of Appeals of North Carolina, and those exceptions "will be taken as abandoned by him." Nevertheless, in order to determnie that justice is done, we have carefully reviewed the record on appeal with respect to all assignments of error brought forward in defendant's brief.

[1]  Defendant's first assignment of error is directed to the action of the trial court in allowing into evidence, for the purpose of illustration, photographs of the premises of Builder's Harbor following the break-in. His contention that the State did not properly authenticate the photographs prior to their introduction is not supported by the record. Prior to the introduction of the photographs, Emory Crawford, owner of Builder's Harbor, described the premises immediately following the break-in as to the location of the safe, layout of the building, markings on the floor and the various items found scattered around the building. When handed the photographs depicting various scenes of the premises and asked if he could identify them, Crawford in each instance did so.

The accuracy of a photograph as a true representation of the scene, object or person it purports to portray may be established by any witness who is familiar with such scene, object or person, or who is competent to speak from personal observation. *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824 (1948). The photographs were properly admitted into evidence for the purpose of illustrating Crawford's testimony, and this assignment of error is overruled.

[2] Next we examine defendant's contention that the trial court erred in failing to charge the jury that there must be evidence to corroborate the accomplice's (Spivey's) testimony that connects defendant with the crime.

"In some jurisdictions an *accomplice* must be corroborated, but in North Carolina the unsupported testimony of an accomplice is sufficient to convict if it satisfies the jury beyond a reasonable doubt. However, it is proper to instruct the jury to be cautious in convicting on such testimony, and refusal to give an appropriate instruction when requested is prejudicial error." 1 Stansbury's North Carolina Evidence, Brandis Rev., § 21, pp. 52-53, and cases cited therein.

The trial court did instruct the jury to be cautious in examining Spivey's testimony. Additionally, in this case the evidence of the accomplice was supported by other evidence. This assignment of error is also without merit.

[3] Defendant also contends that the trial court erred in permitting the State to cross-examine defendant about the commission of other crimes of which there was no evidence. Most of the questions dealt with whether the defendant had committed prior break-ins with Eddie Ray Spivey and to each question defendant answered in the negative.

"It is permissible, for purposes of impeachment, to cross-examine a witness, including the defendant in a criminal case, by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct. (Citations omitted.) Such questions relate to matters *within the knowledge of the witness,* not to accusations of any kind made by others. We do not undertake here to mark the limits of such cross-examination except to say generally (1) the scope thereof is subject to the discretion of the trial

judge, and (2) the questions must be asked in good faith." *State v. Williams,* 279 N.C. 663, 675, 185 S.E. 2d 174 (1971).

Nothing appears in the record that would indicate any abuse of discretion by the trial court or lack of good faith on the part of the State, and defendant's argument is without substance.

[4] Finally, we examine defendant's contention that the trial court improperly denied his motion for a continuance. When the motion was made at the beginning of the trial, the basis therefor now relied upon was not stated. It was only after the verdict was in and judgment entered thereon that defendant suggested that he was not notified by the solicitor which of the several cases against defendant calendared for that session would be tried. Nor has defendant shown any prejudice. Absent an abuse of discretion, a motion for continuance is ordinarily addressed to the sound discretion of the trial court and its ruling thereon is not subject to review on appeal. *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971). No abuse of discretion has been shown. This assignment of error is overruled.

All of defendant's other assignments of error have been carefully examined. No prejudicial error has been made to appear.

No error.

Judges BROCK and PARKER concur.