STATE OF NORTH CAROLINA v. AMOS LOCKLEAR

No. 7412SC954

(Filed 5 March 1975)

1. **Criminal Law § 76— voluntariness of defendant's statements — determination by trial judge**

    Although remarks of the trial judge indicated that there was some question in his mind as to the credibility of the arresting officer who testified on voir dire concerning a statement made by defendant, there was sufficient competent evidence to support the trial court's finding that the statement was voluntary.

2. **Criminal Law § 76— statements made by defendant — sufficiency of evidence of voluntariness**

    The trial court in a prosecution for murder and assault with a deadly weapon did not err in admitting statements signed by defendant waiving his rights and admitting that he committed the offenses charged where officers testified on voir dire that defendant was verbally advised of his constitutional rights, that defendant was given a written copy of his rights and asked to read them which he did, that defendant signed the statement in the officers' presence, that defendant gave no indication that he did not understand what was going on, that defendant did not indicate any difficulty in reading, and that defendant responded intelligently to questions.

3. **Criminal Law § 75— statement by defendant to detective — admissibility**

    In a prosecution for murder and assault with a deadly weapon, the trial court did not err in allowing a detective to testify that he asked defendant "did you do something like that?" and defendant responded "Yes, and if I got the chance, I would do it again."

4. **Criminal Law § 135; Jury § 5— first degree murder — exclusion of juror opposed to death penalty — death penalty not imposed**

    Defendant's contention that the jury was selected only after persons who had general misgivings about the death penalty were ex-

cluded, thereby depriving him of a juror who was not initially pre-conditioned in favor of the death penalty, is without merit since the death penalty was not imposed in this case.

5. **Criminal Law §§ 34, 162— motion to strike — time of making**

Trial court's refusal to allow defendant's motion to strike his earlier testimony that he was "convicted" of prior crimes and the court's failure to give instructions to the jury distinguishing between a conviction and a plea of nolo contendere did not prejudice defendant, particularly where defendant failed to object or move to strike at the time the testimony as to defendant's "conviction" was elicited.

APPEAL by defendant from *Smith, Judge.* Judgment entered 6 June 1974 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 11 February 1975.

Defendant was charged with first-degree murder and assault with a deadly weapon with intent to kill, inflicting serious injury. Upon his pleas of not guilty to both charges, the jury returned verdicts of guilty of second-degree murder and guilty of assault with a deadly weapon, with intent to kill, inflicting serious injury. From judgments sentencing him to imprisonment for a term of 30 years for second-degree murder and imprisonment for a consecutive term of 10 years for assault with a deadly weapon with intent to kill, inflicting serious injury, defendant appealed.

State's evidence tended to show that on 3 February 1974 Robert Beal was driving an automobile and had as a passenger one Prudence Locklear, defendant's estranged wife, when defendant drove up behind them and blew his horn; that both Beal and the defendant stopped their automobiles and. Beal waited while defendant walked up to the driver's side of his automobile; that defendant suddenly reached in his pocket and then Beal felt five blows from a sharp object and fell over in the seat; and that Beal saw a cut on Prudence's arm and blood on her stomach before he passed out.

Several witnesses testified for the State. Two witnesses testified they heard a woman scream, then observed a man standing on the passenger side of the Beal automobile with a long instrument in his hand. They both saw the man wipe the instrument on his pants leg as he was leaving. One of the witnesses testified that when he arrived at the scene of the crime, he found Beal slumped over in the seat and Prudence "kind of sitting on the floorboard on the passenger side with her head up against the dash". He also testified there was a shotgun on the ground

beside the Beal automobile. A third witness testified that he also heard a woman scream, and saw her standing beside the Beal automobile with a shotgun in her hand. He then observed an "Indian man" take the gun away from the woman and stab her in the chest with a knife. The witness summoned the police and then went to the scene of the crime and discovered the woman was dead. The cause of death was stipulated to be a six-inch stab wound in the chest which penetrated the victim's heart.

A Cumberland County deputy sheriff testified that he went from the scene of the crime to a location where he found the defendant and that he read defendant his rights. On voir dire, the deputy sheriff stated that the defendant asked if they were dead and that he was told his wife appeared to be but Beal was not. The defendant then said, "Well, I am sorry; I meant to get both of them."

A Cumberland County detective testified that when the defendant was brought into his presence at the police station he asked the defendant if he would do something like that and the defendant answered, "Yes, and if I got the chance, I would do it again."

Defendant's evidence tended to show that defendant and his wife had been separated; that defendant stopped the automobile driven by Beal to talk to his wife about their children; that when he began talking to them, Beal suddenly reached into his pocket as if he were going for a weapon and attempted to open the door of his automobile; that defendant thought Beal was going to harm him and therefore pulled a knife from his pocket and stabbed him; that his wife, Prudence, then attempted to get a shotgun from the back seat of the automobile and that in an effort to get the gun away from her and to protect himself, defendant stabbed her. Defendant denied understanding any of the questions asked of him at the time of his arrest or making a statement that he "meant to get both of them." Defendant also denied signing a statement waiving his rights and confessing to having committed the crime charged.

Two witnesses for the defendant, who were present at the time of defendant's arrest, testified they did not hear the defendant state he meant to kill both victims. A cell mate of defendant corroborated defendant's testimony by stating defendant related the same version of the incident to him several times while they were in jail.

Additional facts necessary for decision are set forth in the opinion.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Ralf F. Haskell and Associate Attorney Elijah Bunting, for the State.*

*James D. Little, Public Defender, Twelfth Judicial District, for defendant appellant.*

MORRIS, Judge.

[1]   In his first assignment of error defendant maintains the trial court erred in allowing one of the arresting officers to testify over objection as to statements made by the defendant, in denying the defendant's subsequent motion to strike that portion of the officer's testimony, in instructing the jury to remember statements made by the defendant to arresting officers, and finally in failing to grant a new trial. Defendant maintains the greater weight of the evidence fails to show he made a statement that he "meant to get both of them" to the arresting officers. In support of his contention defendant points to testimony of two witnesses present at the arrest scene that they did not hear him make any such statement and to statements allegedly made to the trial court by Deputy Sheriff Brown, one of the arresting officers, who was not available to testify on voir dire during the trial. At the close of all of the evidence and before argument to the jury the trial judge made the following statement to the assistant solicitor:

> "The thing is, Mr. Grannis, if Deputy Sheriff Brown had testified on voir dire, which he didn't, I would have excluded the statement. I would have found the facts to be other than I did and I would have excluded the statement that Locklear allegedly made, 'I meant to kill them both;' because the greater weight of the evidence is just to the contrary. *I don't think I made any error in my ruling on voir dire* but I have worried about it. I simply say for the record, on the merits of same, I am simply telling you I would have found the facts to be otherwise now. I want in the record right now, what I think, so if it goes up the court will know exactly how I felt.
>
> It is not in evidence, but I do not think, from what you have told me and from what Mr. Brown told me, and what

Mr. and Mrs. Thomas testified to, that goes without saying, that what Officer Kitchen says, he may be correct, but my findings would have been different and I would have excluded it." (Emphasis supplied.)

Although the trial judge's remarks indicate there was some question in his mind as to the credibility of the arresting officer who did testify, we find it significant that it was not sufficient to cause him to reverse his earlier ruling permitting the officer to testify that the defendant made such a statement. Moreover, the judge's uneasiness apparently was based largely upon statements made by Deputy Sheriff Brown well after the judge ruled on the admissibility of the defendant's statements. Since these statements are not in the record, they, of course, are not before us for consideration on appeal. All that exists here is conflicting testimony between one of the arresting officers and two of the defense witnesses as to whether defendant actually made such a statement. Determination with respect to the credibility of the witnesses in that regard is, of course, for the jury. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1 (1966). The court's findings of fact with respect to the voluntariness of the statement is supported by competent evidence and is binding on appeal. *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971).

[2] Defendant next assigns error to the admissibility of statements signed by him waiving his rights and admitting that he committed the offenses charged. Defendant premises his argument in part on the fact that he could not read the statements before signing them because he did not have his glasses. He notes that law enforcement officers made no inquiry as to his educational level or whether he could read and asked him to sign the waiver before he received medical attention for a cut on his hand. Defendant also maintains officers did not fully advise, and apprise him of, his rights during interrogation and he did not understand his constitutional rights or the seriousness of the charges against him.

On voir dire officers testified defendant was verbally advised of his constitutional rights, that defendant was given a written copy of his rights and asked to read them which he did, and that defendant signed the statement in their presence. Officers further testified that defendant "did not exhibit any indication that he did not understand what was going on"; that "[h]e did not indicate any difficulty in reading or [that he] could not read." To the questions asked of him he responded in-

telligently and would "clarify things" when questioned further. A review of the above testimony shows that "[t]he finding of the trial court upon *voir dire* that the statements made by the defendant to the officers were freely, voluntarily and understandingly made is supported by competent evidence and must be sustained. (Citations omitted.)" *State v. Howard,* 21 N.C. App. 75, 77, 203 S.E. 2d 393 (1974). This assignment of error is overruled.

[3]  In his third assignment of error defendant contends the trial court erred in allowing Detective Levee to testify over objection that he asked defendant "did you do something like that?" and defendant responded "Yes, and if I got the chance, I would do it again." Our review of the record leads us to conclude that this testimony was properly admitted into evidence. We also find it significant that testimony of similar import made to Officer Kitchen was admitted into evidence after an extensive voir dire. Consequently, even assuming arguendo, that the trial court erred in admitting this testimony, it was harmless error and did not prejudice defendant in any way. *State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283 (1972).

[4]  Defendant next asserts that the trial court should not have allowed the State to challenge a juror for cause on the basis of her statement that she would find it difficult to find the defendant guilty of first-degree murder knowing the death penalty would be imposed. Although the death penalty was not imposed in this case, defendant maintains the jury was selected only after persons who had general misgivings about the death penalty were excluded, thereby depriving him of a juror who was not initially preconditioned in favor of the death penalty. Defendant cites the United States Supreme Court case of *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770 (1968), in support of his argument. We find defendant's contention without merit. This same argument was advanced to and rejected by the United States Supreme Court in *Bumper v. North Carolina,* 391 U.S. 543, 20 L.Ed. 2d 797, 88 S.Ct. 1788 (1968). There the Court stated:

> In *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been excluded for cause those who, without more, are opposed to capital punishment or have conscienti-

State v. Locklear

ous scruples against imposing the death penalty. *Our decision in Witherspoon does not govern the present case, because here the jury recommended a sentence of life imprisonment.* The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. *Duncan v. Louisiana,* 391 U.S. 145, 20 L.Ed. 2d 491, 88 S.Ct. 1444; *Turner v. Louisiana,* 379 U.S. 466, 471-473, 13 L.Ed. 2d 424, 428, 429, 85 S.Ct. 546; *Irvin v. Dowd,* 366 U.S. 717, 722-723, 6 L.Ed. 2d 751, 755, 756, 81 S.Ct. 1639. We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon.* Accordingly, we decline to reverse the judgment of conviction upon this basis." (Emphasis supplied.) *Bumper v. North Carolina, supra,* at p. 545.

Defendant's fourth assignment of error is overruled.

[5] Defendant's final assignment of error relates to the denial of his motion to strike certain testimony elicited from the defendant by the Assistant District Attorney concerning his "convictions" in 1945 for breaking and entering and attempted rape. On redirect examination of the defendant if was pointed out by defense counsel that defendant actually plead nolo contendere to these charges. Defendant argues that by refusing to allow the motion to strike his prior testimony that he was "convicted" of these crimes, and by the court's failure to give instructions to the jury distinguishing between a conviction and a plea of nolo contendere, the trial judge committed error to his prejudice. We disagree. We note that defense counsel interposed no objection nor did he move to strike at the time the testimony as to defendant's "conviction" was elicited. His objection comes too late, even if he had shown that the result would have been different had the evidence been excluded. In our opinion defendant received a fair trial free from prejudicial error.

No error.

Judges PARKER and HEDRICK concur.