STATE OF NORTH CAROLINA v. JOE LEWIS WHITE

No. 24

(Filed 26 June 1975)

1. **Criminal Law § 117— testifying accomplice — written, timely request for instruction — denial error**

In a prosecution for first degree murder and common law arson where the evidence tended to show that defendant's girl friend at least aided and abetted him in the commission of those crimes and therefore was an accomplice, the trial court erred in denying defendant's request, made in writing and before argument to the jury, for an instruction on accomplice testimony.

State v. White

2. **Criminal Law § 9— accomplice defined**

   An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender unites with him in the commission of the crime charged, either as a principal, as an aider and abettor, or as an accessory before the fact, and the generally accepted test as to whether a witness is an accomplice is whether he himself could have been convicted for the offense charged, either as a principal, or as an aider and abettor, or as an accessory before the fact, and if so, such a witness is an accomplice within the rules relating to accomplice testimony.

3. **Arson § 1— common law arson — statutory felony — distinction**

   Common law arson is the wilful and malicious burning of the dwelling house of another person, while the statutory felony defined in G.S. 14-65 is committed when the occupant of a building used as, or the owner of a building designed or intended as, a dwelling house wantonly or wilfully or for a fraudulent purpose burns or causes it to be burned.

4. **Arson § 5— common law arson — instruction on burning for fraudulent purpose**

   The gravamen of the offense of common law arson is the danger that results to persons who are or might be in the dwelling, whereas the main import of G.S. 14-65 is protection of the property itself; therefore, the better practice is for the trial court to maintain a clear distinction between the wilful and malicious burning of common law arson and burning for a fraudulent purpose as defined by G.S. 14-65.

5. **Criminal Law § 75— in-custody statement — admission proper**

   The trial court did not err in allowing into evidence a statement made by defendant in the presence of two officers in response to interrogation while they were transporting him by car from N. J. to N. C., since the officers gave defendant the *Miranda* warnings, no promises or threats were made to defendant, and defendant stated that he understood his rights and would proceed without an attorney.

6. **Constitutional Law § 37; Criminal Law § 75— two confessions — one waiver of rights — second confession inadmissible**

   The trial court erred in allowing into evidence testimony by an officer that defendant was given full *Miranda* warnings, he was then placed in the same room with his accomplice, the accomplice made a statement as to the circumstances preceding and during the crime, the officer asked defendant if he had heard and understood the statement, if he disagreed with it, and if the accomplice told the truth, and the officer testified that defendant stated he did not disagree with the statement and what the accomplice said was true, since there was neither evidence nor finding by the trial judge that defendant waived his right to remain silent or his right to have counsel present during this particular in-custody interrogation; moreover, this interrogation was not part of the same transaction which produced a prior confession and the State was not entitled to rely on defendant's earlier waiver of his rights.

State v. White

DEFENDANT appeals from two judgments of *Clark, J.*, entered at the August 12, 1974 Session of SCOTLAND Superior Court.

Defendant was duly indicted in separate bills for first degree murder of one Mose Watson and for wilfully and maliciously burning Watson's dwelling house, i.e., common law arson. The indictments, returned at the June 24, 1974 Criminal Session of Scotland Superior Court, alleged that both offenses occurred on May 19, 1973, and were consolidated for trial. The jury returned verdicts of guilty as charged and judgments imposing the death penalty were entered in both cases.

Evidence for the State was, briefly summarized, as follows: Mose Watson was the prosecuting witness in a case pending in Scotland County in which defendant's brother, Bunny White, was charged with burglary and robbery. Defendant and his girl friend, Delores Austin, attended the preliminary hearing of the charges against Bunny White after which defendant asked Delores Austin to help him kill Watson. He discussed the killing of Watson in the presence of Delores Austin thereafter "dozens of times" and stated on occasion that only he "had nerve enough to do it." During the evening of May 19, 1973, defendant poured gasoline on and set fire to Watson's home knowing Watson was inside. Watson was burned to death.

Defendant testified in his own behalf and denied the burning.

*Rufus L. Edmisten, Attorney General, and William F. O'Connell, Assistant Attorney General, for the State.*

*J. Robert Gordon for defendant appellant.*

EXUM, Justice.

Defendant must be given a new trial on both indictments because of prejudicial error committed in the trial judge's instructions to the jury.

The principal State's witness was Delores Austin. Her testimony was essentially this: She was defendant's girl friend. Defendant asked her after Bunny White's preliminary hearing to help him kill Watson. She overheard defendant discuss killing Watson "dozens of times," many times with other members of defendant's family. On the night of May 19, 1973, defendant sent her twice to Watson's home to determine whether Watson

was there. After her second trip she reported to defendant that Watson was at home. He asked her to help him saying that it "was something he must do and that he couldn't let that old man testify against his brother." After defendant siphoned two cans of gasoline out of his father's truck he carried one can and Delores Austin carried the other to the vicinity of Watson's home. Delores Austin then testified:

> "Joe left me about two houses from Mose's house because I couldn't run, but I could see Joe Lewis go up to Mose's house and pour gas on it around the back steps. I saw Joe Lewis get up on a stone and look in the window. All of a sudden I saw an explosion of fire. Joe Lewis was running towards me and when he reached me he said, 'I got him.' "

She further testified that on the following Monday she and defendant went to McColl, South Carolina, then to Sanford, North Carolina, and finally to Tabor City where they lived for a year and a half. After they "found out the law was behind" them they were taken by defendant's father to some woods near Laurinburg where they were picked up by defendant's brothers and mother who took Delores Austin to the bus station in Fayetteville. She took a bus to New Haven, Connecticut, where she surrendered to law enforcement officials. Although there is testimony in the record by Detective L. E. Smith of the Laurinburg Police Department that Delores Austin had at one time been charged with the murder of Mose Watson she admitted having pled guilty only to accessory after the fact to murder.

[1] After the State and defendant had rested their cases and before argument to the jury, defendant requested in writing the following jury instruction:

> "The witness, Delores Austin, has previously entered a plea of guilty to the crime of accessory after the fact of murder in the first degree. Therefore, Delores Austin, is considered by the law to have an interest in the outcome of this case. Consequently, Ladies and Gentlemen of the Jury, I instruct you to examine every part of her testimony with the greatest care and caution. If, after doing so, you believe her testimony in whole or in part, you should treat what you believe the same as any other believable evidence."

The trial judge's only instruction bearing upon the testimony of an interested witness was:

> "The defendant in this case testified in his own behalf. In this connection, I do instruct you that the defendant has an interest in the outcome of this case and that you should, therefore, carefully scrutinize his testimony in the light of such interest; and you may also find that any other witness has an interest in the outcome of this case; and in deciding whether to believe such a witness, you may take his interest into account. If, after doing so, you believe the testimony of the defendant, or the testimony of any other interested witness in whole or in part, then you should treat what you believe the same as any other believable evidence."

This instruction fell far short of complying with defendant's request. Failure to instruct the jury in substance that Delores Austin was an accomplice, therefore an interested witness, and that her testimony should be carefully scrutinized was, in view of defendant's request, and the facts supporting it, prejudicial error. *State v. Spicer,* 285 N.C. 274, 204 S.E. 2d 641 (1974); *State v. Bailey,* 254 N.C. 380, 119 S.E. 2d 165 (1961); *State v. Hooker,* 243 N.C. 429, 90 S.E. 2d 690 (1956).

Defendant's request was, it is true, in part erroneous. The fact that Delores Austin had previously pled guilty to accessory after the fact to murder of Mose Watson would not, *ipso facto,* make her an accomplice of defendant. "The more generally accepted view is that an accessory after the fact is not an accomplice." *State v. Bailey, supra,* 254 N.C. at 387, 119 S.E. 2d at 171. The trial judge was not, however, relieved of his duty to give a correct accomplice testimony instruction, there being evidence to support it, merely because defendant's request was not altogether correct. *State v. Bailey, supra.* In *Bailey* the requested instruction on accomplice testimony was legally insufficient in two respects. First, the request called for a charge that as a matter of law certain witnesses were accomplices when there was evidence from which the jury could find that they were not. Second, the request gave the defendant, in substance, a more favorable instruction than he was entitled to as a matter of law. We held, nevertheless, that the trial judge, "while not required to parrot the instructions 'or to become a mere judicial phonograph for recording the exact and identical words of counsel,' must charge the jury in substantial conformity to the prayer;" and we set out what would have been proper in-

structions. *Id.* at 386, 119 S.E. 2d at 170; *accord, State v. Hooker, supra.*

**[2]** "[A]n 'accomplice' is a person who knowingly, voluntarily, and with common intent with the principal offender unites with him in the commission of the crime charged, either as a principal, as an aider and abettor, or as an accessory before the fact. The generally accepted test as to whether a witness is an 'accomplice' is whether he himself could have been convicted for the offense charged, either as a principal, or as an aider and abettor, or as an accessory before the fact, and if so, such a witness is an accomplice within the rules relating to accomplice testimony." *State v. Bailey, supra,* 254 N.C. at 387, 119 S.E. 2d at 171. It is not necessary for a witness to be charged with the same crime or crimes as the defendant in order to be an accomplice. *State v. Spicer, supra.*

The testimony of Delores Austin herself, uncontradicted except by defendant, was enough to convict her of the same crimes charged against defendant on the theory that she at least aided and abetted him in the commission of those crimes.

On this evidence defendant's request for an accomplice instruction with regard to the testimony of Delores Austin was, except for the first sentence, a good statement of the law. The trial court should have in substance so charged the jury. There are compelling reasons, demonstrated in legal history and policy, for instructing juries to scrutinize the testimony of accomplices. *See State v. Bailey, supra,* for a good discussion of them. "A skeptical approach to accomplice testimony is a mark of the fair administration of justice." *Id.* at 388, 119 S.E. 2d at 171.

There is another aspect to the trial judge's instructions to the jury which deserves noting. He charged that the State must prove beyond a reasonable doubt "that the defendant, in burning the house, acted maliciously. Now, that is, intentionally, wilfully, or wantonly, without lawful excuse or justification *or with a fraudulent purpose.*" (Emphasis supplied.) Thereafter he charged that the "State must prove that it was done maliciously *or with a fraudulent purpose.* I instruct you that the burning of a dwelling by the defendant . . . for the purpose of putting Mose Watson in fear or terror to prevent him from testifying . . . would constitute *a fraudulent purpose* on his part." (Emphasis supplied.) In his final mandate to the jury in the arson case the trial judge charged that the State must

prove, among other things, that "the defendant, in burning the house, acted maliciously, *with a fraudulent purpose* . . . . " (Emphasis supplied.)

[3] In these instructions the trial judge seems to have confused the common law crime of arson, for which defendant was indicted and which before the enactment of Chapter 1201, 1973 Session Laws, was a capital crime, with the general felony defined by G.S. 14-65. Common law arson is the wilful and malicious burning of the dwelling house of another person. *State v. Arnold,* 285 N.C. 751, 208 S.E. 2d 646 (1974) ; *State v. Porter,* 90 N.C. 719 (1884) ; 2 Wharton's Criminal Law and Procedure § 388 (1957) ; Curtis, The Law of Arson § 1 (1936). The statutory felony defined in G.S. 14-65 is committed when the occupant of a building used as, or the owner of a building designed or intended as, a dwelling house wantonly and wilfully "or for a fraudulent purpose" burns or causes it to be burned. The trial judge equated burning "for a fraudulent purpose" with a "wilful and malicious" burning. In effect, he charged the jury that they could convict the defendant if it found that he burned Mose Watson's dwelling either wilfully and maliciously or with a fraudulent purpose.

[4] The mental state denoted by the term "wilful and malicious," is not the same as that denoted by the term "fraudulent purpose." For a burning to be "wilful and malicious" in the law of arson it must simply be done "voluntarily and without excuse or justification and without any bona fide claim of right. An intent or animus against either the property itself or its owner is not an element of the offense" of common law arson. 2 Wharton's Criminal Law and Procedure § 390; *accord,* Curtis, The Law of Arson §§ 68-69; *See also* North Carolina Pattern Jury Instructions, Criminal, 215.10. Burning "for a fraudulent purpose," on the other hand, describes a mental state having to do with the desire for illegal pecuniary gain usually at the expense of the property's insurer. The gravamen of the offense of common law arson is the danger that results to persons who are or might be in the dwelling, whereas the main import of G.S. 14-65 is protection of the property itself. While burning the dwelling of Mose Watson for the purpose of frightening Watson and keeping him from testifying for the State would clearly be a wilful and malicious burning, we doubt that it would be a burning "for a fraudulent purpose."

State v. White

·    We do not decide whether the precise use of the term made here by the able trial judge constituted legal error. It might be argued that he defined "fraudulent purpose" to be in this case burning of the dwelling for the purpose of intimidating its occupant, a State's witness. This act would also be a wilful and malicious burning. Since, the argument goes, two or more things equal to the same thing are equal to each other the charge is saved from error. Be that as it may, and without considering all the factual circumstances which may be embraced by the term "fraudulent purpose," we believe that the concept has no place in a common law arson case. The better practice is to maintain a clear distinction between this ancient crime and burning for a fraudulent purpose as defined by G.S. 14-65.

[5]    Because the questions will probably arise at defendant's second trial we discuss assignments of error relating to the introduction of two confessions of the defendant, made at different times. According to the State's evidence the first one was made on May 4, 1974, in the presence of Detective L. E. Smith and SBI agents William Dowdy and Hugh Currin, Jr., in response to interrogation while they were transporting defendant by car from Patterson, New Jersey, where he had been extradited to North Carolina. This interrogation and confession occurred in the automobile shortly after 12:00 Noon before the car left Patterson. Evidence for the State on the question of the admissibility of this confession was that before making it defendant was fully advised of both his right to have counsel, either privately employed or court appointed, during questioning and his right to remain silent in accordance with *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), and that no promises or threats were made to defendant. Defendant replied that he understood his rights and "would proceed without an attorney." Defendant, on *voir dire*, admitted being given the *Miranda* warnings and that no coercion was used, but claimed that he asked for a lawyer. The trial court found facts in accordance with the State's evidence, found that defendant waived his right to counsel during this interrogation, that the confession was voluntary and concluded that it was admissible. There was ample evidence to support these findings, including the implied finding that defendant also waived his right to remain silent. Consequently, there was no error in admitting this confession.

[6]    The State also offered evidence that Delores Austin who had been brought to the Laurinburg Police Station on April 29,

1974, had on that date, after waiving her constitutional rights, made a statement essentially in accordance with her testimony at the trial. On May 4, 1974, while defendant was in custody at the Laurinburg Police Station he was again given full *Miranda* warnings after which he and Delores Austin were placed together in the same room. On a second *voir dire* hearing Detective Smith testified that Delores Austin repeated her statement in defendant's presence. He then asked the defendant:

> "[I]f he heard and understood the statement that Delores had made and he said that he did. I asked him if he disagreed with anything—any part of the statement and he said that he did not, that she had told the truth and that this was the way it happened. The whole interview with Delores and the defendant took less than half an hour."

After finding that this second statement of defendant was made "after he had been fully advised of his rights . . . and that it was freely and understandingly and voluntarily . . . made, without compulsion or duress or promise of leniency and is admissible" the trial court permitted Detective Smith to testify before the jury that upon being confronted with the statement of Delores Austin defendant stated he did not disagree with it and what she said was true.

On this record this was prejudicial error.

With regard to defendant's second incriminating statement amounting, in effect, to another confession, there was neither evidence nor finding by the trial judge that defendant waived his right to remain silent or his right to have counsel present during this particular in-custody interrogation. "Waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Miranda v. Arizona, supra; accord, State v. Turner,* 281 N.C. 118, 187 S.E. 2d 750 (1972); *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971). This second interrogation, moreover, was not part of the same transaction which produced defendant's first confession. It occurred a number of hours later (at least the number required to drive from Patterson, New Jersey, to Laurinburg) and was at a different place and under different circumstances. The State was not, therefore, entitled to rely on defendant's earlier waiver which had occurred in Patterson, New Jersey. His confession after waiver at that time "exhausted the procedure" to which

the waiver applied. *State v. Wright,* 274 N.C. 84, 94, 161 S.E. 2d 581, 589 (1968).

The prejudice to defendant from erroneously admitting his second confession into evidence notwithstanding that an earlier confession was properly admitted is shown by what transpired at the trial after the jury had begun its deliberations. The jury returned into court to inquire whether it could hear again what defendant said to officers in New Jersey, Delores Austin's statement, and defendants' answers to Detective Smith's inquiries as to whether he agreed with her statement. During this episode one juror said, "Did he agree with her statement or did he disagree. That's the hang-up. Did he disagree with her? Did he say that he didn't do it at the time or did he say that she was telling the truth?" The trial court then summarized again for the jury his recollection of that portion of the State's evidence which was that defendant agreed Delores Austin was telling the truth. Defendant's statement made on the trip from New Jersey was not at this time reviewed.

For errors committed defendant is given a

New trial.