STATE OF NORTH CAROLINA v. VINCENT RAY RIVES

No. 7615SC505

(Filed 15 December 1976)

**Constitutional Law § 37; Criminal Law § 75— waiver of constitutional rights — sufficiency of evidence**

Evidence supported the findings and conclusion of the trial court that defendant was fully warned of and waived his right to remain

silent and his right to counsel where such evidence consisted of testimony by a deputy sheriff that he told defendant that he had a right to stop answering the sheriff's questions at any time and, if defendant wished to have an attorney present before he answered any questions, he could do so; and the deputy sheriff testified that defendant stated he understood his rights, did not want an attorney present, and wanted to make a statement.

APPEAL by defendant from *Preston, Judge.* Judgment entered 16 February 1976 in Superior Court, CHATHAM County. Heard in the Court of Appeals 21 October 1976.

Defendant pled not guilty to the charge of feloniously discharging a firearm into an occupied building on the night of 17 January 1975. The State's evidence tended to show that defendant became angry when he lost money in a poker game at a poolroom near Goldston. He cursed Otis Headen, who hit him. Defendant was escorted from the poolroom. Several minutes later a shotgun was fired through the window, and Headen was hit in the legs. Defendant was heard to say: "Hold it, goddamn it, don't nobody move." Deputy Sheriff Whitt interrogated the defendant on 19 January 1975, two days after the shooting, and testified to a confession made at that time.

Defendant offered no evidence. The jury found defendant guilty as charged. From judgment imposing imprisonment, defendant appeals.

*Attorney General Edmisten by Associate Attorney Sandra M. King for the State.*

*Gunn & Messick by Robert L. Gunn for defendant appellant.*

CLARK, Judge.

Defendant assigns as error the admission of the confession made to Deputy Whitt on 19 January 1975 at the Chatham County Jail. Defendant contends that there is no indication that Deputy Whitt advised him of his right to stop answering questions if he began answering them and his right to stop answering questions at any time until talking with a lawyer. He concludes that since there was no showing of an express waiver of these rights, the confession was improperly admitted into evidence.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), the Supreme Court placed a heavy burden

on the prosecution to show that there had been a knowing and intelligent waiver of the Fifth Amendment privilege against self-incrimination. *Miranda* did not further define the requisite standard of proof nor did it or subsequent United States Supreme Court decisions establish guidelines for the prosecution in meeting its heavy burden.

More recent Supreme Court decisions have seemed to ease this burden in various contexts. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed. 2d 313 (1975) (dissenting opinion). In *Mosley,* the Court held that the defendant had waived the privilege, even though he had asserted his right to remain silent at a prior interrogation, when subsequently the warnings were given again, and the confession obtained was about a crime unrelated to the one for which he was initially interrogated. There is nothing in *Mosley* to indicate that the waiver had been made by affirmative statements. The defendant signed a "notification form," but otherwise the court merely noted that he failed to request the presence of counsel during the interrogation. In *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed. 2d 618 (1972), the court held that the privilege does not require that the voluntariness of a confession be determined by more than a preponderance of the evidence. In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed. 2d 1 (1971), the court held that a confession could be admitted for purposes of impeachment, if otherwise trustworthy, even though it would not be admissible to establish the case in chief because the *Miranda* warnings had not been given.

The lower federal courts have also seemed to ease the prosecution's heavy burden to demonstrate a knowing and intelligent waiver. In *United States v. Frazier,* 476 F. 2d 891 (D.C. Cir. 1973), an objective test was adopted. The court held that there had been a knowing and intelligent waiver even when the defendant, after having been given the full *Miranda* warnings and having stated that he understood his rights, made a statement but instructed his interrogator not to write anything down. In holding that this instruction was not an alerting circumstance militating against an effective waiver, the court ruled that the heavy burden imposed upon the prosecution in *Miranda* was satisfied by proof that (1) the warnings were given properly, and (2) the person warned had the capacity to understand the warnings. Note, *Miranda Rights,* 52 N.C. L. Rev. 454 (1973). It is accurate to conclude that the lower federal courts have

not required an affirmative statement that expressly waives the privilege, but have applied an objective test from which an effective waiver may be inferred. See also *United States v. McNeil*, 433 F. 2d 1109 (D.C. Cir. 1969); *Pettyjohn v. United States*, 419 F. 2d 651 (D.C. Cir. 1969); *United States v. Hayes*, 385 F. 2d 375 (4th Cir. 1967).

In *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971), the North Carolina Supreme Court adopted a more stringent standard than the federal courts have. The court ruled that an intelligent waiver of the right to counsel could not be inferred when the defendant was given the *Miranda* warnings, stated that he knew and understood his rights, and failed to request counsel. *But see Blackmon v. Blackledge*, 541 F. 2d 1070 (1976) where the court held, in a federal habeas corpus proceeding brought by the same defendant after conviction at a subsequent trial, that a waiver of the right to counsel could be inferred in these circumstances. The stringent requirement of an express and affirmative waiver of the right to counsel has been followed in subsequent cases. *State v. Carter*, 289 N.C. 35, 220 S.E. 2d 313 (1975); *State v. Patterson*, 288 N.C. 553, 220 S.E. 2d 600 (1975); *State v. White*, 288 N.C. 44, 215 S.E. 2d 557 (1975); *State v. Lawson*, 285 N.C. 320, 204 S.E. 2d 843 (1974); *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972); and *State v. Turner*, 281 N.C. 118, 187 S.E. 2d 750 (1972).

Another extension of *Miranda* appears in *State v. White, supra,* where the court again refused to find an effective waiver of the right to counsel in the absence of an affirmative statement by the defendant that he did not desire the presence of counsel. The defendant had been interrogated twice. The court found that his waiver during the first interrogation was effective since it was affirmative. During the second interrogation some hours later, the warnings were again given; defendant again stated that he understood them, but on this occasion failed to make an affirmative waiver of the right to counsel. Even in these circumstances the court held that a showing that the defendant was properly warned of his rights and stated that he understood them could not be sufficient to constitute an effective waiver of the right to counsel. But see *Michigan v. Mosley, supra; People v. Sievers*, 255 Cal. App. 2d 34, 62 Cal. Rptr. 841 (1967).

The recent case of *State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976), may herald a relaxation of the strict requirement

of *Blackmon*. In that case the defendant had been given the full *Miranda* warnings and had stated that he understood them. Although he had affirmatively waived his right to counsel, he contended that there had been no express waiver of his right to remain silent. He had been asked whether he wished to answer a question, and rather than answering in the affirmative, had merely stated he knew nothing about the charge against him. The court adopted a test for waiver which seems to stand in contrast to that of *Blackmon*. "[I]n order to determine whether defendant waived his right to remain silent, it is also necessary to *look at the other circumstances*." (Emphasis added.) The court then found sufficient evidence to support the trial court's finding that " 'such response . . . taken together with the other circumstances . . . represented a specific indication that he was willing to answer the questions . . . and be interrogated; that he did nothing to indicate that he did not want to talk to them. . . . ' " 290 N.C. at 398, 226 S.E. 2d at 664. The circumstances surrounding the waiver are sparsely stated in *Swift* and the decision offers little to guide the wary trial judge. However, the logic of *Swift* leads to the conclusion that the State is not required to show that a defendant expressly waived each *Miranda* right with an affirmative statement. Once there has been a showing that the *Miranda* warnings were properly given and understood by the defendant, *Swift* seems to hold that a waiver may be inferred from the statements and conduct of the defendant and other relevant circumstances.

In the case before us, Deputy Whitt testified in court just prior to the *voir dire* that he told the defendant "that he had the right to stop answering my questions at any time; that if he wished an attorney present before any questions, he had the right to do so." At *voir dire* Deputy Whitt further testfied that defendant stated he understood his rights, did not want an attorney present, and wanted to make a statement.

We find that the evidence supports the findings and conclusion of the trial court that, either under the standard of *Blackmon* or the seemingly more liberal one of *Swift*, the defendant was fully warned of and waived his right to remain silent and his right to counsel.

We have carefully examined defendant's other assignment of error and find it to be without merit.

Smith v. Cotton Mills

No error.

Judges MORRIS and ARNOLD concur.